Shields *v.* Netherland.

5L 193
9L 205
9L 286

5L 193
e116 194
, 116 195

JAMES T. SHIELDS *v.* R. G. NETHERLAND *et als.*

1. DEED. *Privy examination. Certificate. Can only be attacked for fraud.* If the certificate of the privy examination of a *feme covert*, and the commission under which it is taken, are in due form and signed by the proper officials, a court of chancery has no jurisdiction to enquire into their regularity, nor is parol evidence admissible to impeach them for mere irregularity. The policy of the law requires that they shall be conclusive, and they can only be attacked for fraud.

2. SAME. *By husband and wife cannot be impeached. When.* The validity of a deed made by a husband and wife in trust to secure money advanced, on the faith thereof, to the husband, by an innocent third person, where the probate is in due form by the proper officers, cannot be impeached upon the ground that the deed and the certificate of privy examination were dated earlier than the date of actual execution, or that the married woman was not unable to appear before the clerk in proper person, or that the commission to take the privy examination was in blank when issued, or that the privy examination was not taken in the most approved mode.

3. SAME. *Married woman cannot contradict, by parol, certificate of acknowledgment. When.* The fact that the husband misled the wife as to the nature of the instrument she was called upon by him to sign, and which she executed at his request and without reading it, does not constitute such fraud as will enable her to contradict, by parol, the certificate of acknowledgment and privy examination to a trust deed to secure money loaned to the husband, neither the creditor nor the trustee being present, nor having any reason to suspect the imposition.

4. WILL. *Construction. Contingent remainder cut off. When* By his will, a testator devised to his daughter and her husband certain lands and other property, to be disposed of by them as they may see proper; by a codicil, the testator declared that it was not his intention to make the estate of the husband, in the event he survived his wife, a fee simple estate, but that he should hold the same for his natural life only, and, upon his decease, the lands should descend to the children of the daughter or her heirs; by a subsequent clause in the codicil the testator provided that the husband and wife should have power, during their joint lives, to dispose of the lands devised to them, by deed exe-

13—VOL. 5.

cuted by them jointly, and proved and acknowledged according to law for disposing of the estates of married women. The husband and wife joined in a conveyance of the land, in the mode prescribed, to secure a debt for money borrowed by the husband. *Held,* that the conveyance passed the entire estate, and cut off the contingent remainder in favor of the children or heirs of the daughter.

5. SUPREME COURT PRACTICE.   *Land sale.*   *Discretion of Chancellor.* Where a decree of foreclosure of a trust by sale directs the trust property to be sold by the clerk of the court instead of the trustee, the beneficiary who does not appeal, cannot assign error on that part of the decree, nor would this court control the discretion of the chancellor in such a matter except in a clear case of its erroneous exercise.

FROM HAMBLEN.

Appeal from the Chancery Court at Morristown, ———, Ch.

J. T. & J. K. SHIELDS for complainant.

W. P. GILLENWATERS for defendants.

COOPER, J., delivered the opinion of the court.

On the 18th of May, 1872, there was registered in the register's office of Hawkins county a deed purporting to be executed by R. G. Netherland and Ida his wife, by which they conveyed certain land in fee to F. M. Fulkerson, in trust to secure a note of the said Netherland and wife to Nancy Dalzell, dated March 18th, 1872, at twelve months, with interest at the rate of ten per cent. per annum from the first of that month, and with power in the trustee to sell in default of payment. The privy examination of the wife to the execution of this deed was taken by W. R. Pearson, a justice of the peace, under a commission

issued by the clerk of the county court of Hawkins county. The commission is in the form prescribed by the Code, sec. 2077, and the certificate in the form given in sec. 2078, and both bear date the 18th March, 1872. The acknowledgment by the husband was before the clerk on the 25th April, 1872. The note secured by the trust recites on its face that for its payment the makers have on the day of its date executed the deed of trust to Fulkerson, and refers to it as a part of the transaction.

This litigation was commenced on the 31st of January, 1877, by James T. Shields, as a judgment creditor of R. G. Netherland, to reach his equitable interest in the land conveyed as above after satisfying the mortgage debt. On the 8th of May, 1877, the children of R. G. and Ida Netherland caused themselves to be made parties defendant to this bill, and on the 15th of August, 1877, filed their cross-bill to set up a claim to a remainder interest in the land under the devise in their grandfather's will, by which the land was given to their parents. On the 30th of January, 1878, F. D. Alexander, as the executor and legatee of Nancy Dalzell, then deceased, filed his bill to have a construction of the grandfather's will, the interest acquired by the trustee in the land declared, and for a foreclosure of the trust deed. On the 25th of March, 1878, Ida Netherland filed her bill seeking to set aside the trust deed as not having been validly executed by her. These bills were all consolidated and heard together. The chancellor gave to Alexander and Shields the relief sought by them, and dismissed

the bills of Ida Netherland and her children, and they have appealed.

There is evidence in the record tending to show that the trust deed to Fulkerson was not signed by the wife nor her privy examination taken on the 18th of March, 1872, but only about the 18th of May, 1872, when the instrument was noted for registration. There is also proof tending to show that the commission to take the privy examination of the wife was in blank as to the commissioner when issued by the clerk, and that the blank was filled in with the name of the magistrate by R. G. Netherland, and perhaps about the time the probate was taken. An effort is also made, though not very successfully, to show that at the time of the privy examination of the wife, she was not unable from age, sickness or debility, "or other cause," to use the language of the Code, section 2077, to appear before the clerk in proper person. There is also an effort to show that the magistrate, who took the privy examination of the wife, did not in all respects perform the duty in the mode in which it is thought the statute implies that it shall be done. *Rhea* v. *Iseley*, 1 Tenn. Leg. Rep., 292, 296. The commission and certificate being in due form, and signed by the proper officers, if it be conceded that the proof establishes all that is contended for, it would result that irregularities had occurred in the probate. But it has long been settled in this State that a court of chancery has no jurisdiction to enquire into the regularity of a privy examination, or other probate. *Campbell* v. *Taul*, 3 Yer., 548. The authorities in

other States are in accord.    *Hartley* v. *Frash*, 6 Tex.,.
208; *Baldwin* v. *Snowden*, 11 Ohio St., 203.    The
reason is, that the taking of the probate of an in-
strument under the authority of law is in the nature
of a judicial act, an essential part of the conveyance,
and cannot be contradicted by parol proof.    The pol-
icy of the law requires that the official certificate
should be conclusive.    If it were otherwise, and the
certificate only *prima facie* evidence of the facts in-
tended to be verified, the title to land would lose, in
a great measure, that security which the registration
laws were designed to ensure.    The probate can only
be attacked for fraud.    *Campbell* v. *Taul*, 3 Yer., 548;
*Finnegan* v. *Finnegan*, 3 Tenn. Ch., 510, 514.

The bill of the children of R. G. and Ida Neth-
erland does not aver any facts upon which a charge
of fraud can be based against any person.    The bill
of Ida does expressly charge her husband with fraud
in procuring her signature to the trust deed, when
she supposed she was only executing notes with him.
But her bill does not state any fact which would
sustain a charge of fraud, or of collusion with the
husband, against Nancy Dalzell, F. M. Fulkerson, or
the magistrate who took her privy examination, nor
does she implicate them in the fraud, if any was
committed.    There is not a particle of testimony in
the record tending in the least to fix upon either of
them an intentional participation in the alleged fraud of
the husband.    This was conceded in the argument so
far as the trustee and beneficiary were concerned.    It
was argued that the magistrate, who took the privy

examination of the wife, was cognizant of the husband's intention, and aided him therein. But the argument has nothing to support it in the record. All that can be imputed to him, even upon the testimony of the complainant herself, is a somewhat perfunctory performance of his duty in taking the privy examination, not unusual, we are sorry to say, in such cases. The husband expressly says that he has no reason to believe that any one connected with the deed had any intention of fraud at the time of its execution. And the evidence of the commissioner himself leaves no doubt that he intended to discharge, and supposed he was discharging his duty under the commission in conformity with the requirement of the law.

The fraud of the husband, according to the allegations of the wife's bill, consisted in leading her to suppose that he only wished her to execute with him a note or notes, and in allowing her to sign the trust conveyance without advising her of its purport. She says, in her deposition, that the husband asked her to sign a note, that she intended to execute the note, and signed it willingly. She adds that she signed her name "in two places on the same paper." The note, as we have seen, recites on its face that she and her husband had, at the same time and as part of the transaction, executed the deed of trust in controversy to secure the payment of the note. She now, says that she did not read the instruments then signed by her. If it be conceded that the husband did commit a fraud on the wife as charged, the question

presented is, whether the security of the beneficiary, who is in no way implicated in that fraud, is thereby affected.

If the husband could be considered as the agent of the trust creditor for the purpose of procuring the wife's conveyance, as where the creditor is seeking to obtain a mortgage on the wife's land for the security of a pre-existing debt of the husband, the creditor might be bound by the husband's act. *Central Bank* v. *Copeland,* 18 Md., 305. It is not claimed that there is any such agency in this case, and it is clear that the creditor was dealing at arm's length with the husband for security for money to be advanced on the faith thereof. The husband, moreover, had an interest in the property, and the wife had the power, by joining with him in a deed with privy examination, to give him the benefit of her interest. Whatever was done by the husband was done for himself. Under such circumstances, where the wife knows and intends to bind herself for the debt, and the grantee, without suspicion of wrong, has paid the consideration, it seems to be clear on principle that the conveyance of the wife will be binding on her. And this rule was applied to the protection of a *bona fide* sub-grantee of a fraudulent grantee, as to the wife, of the husband and wife, by this court, in *Coleman* v. *Satterfield,* 2 Head, 259.

The only ground of the wife's equity, if she has any, as to third persons is that she did not read the instruments signed by her. But it is obvious that the fact that a party did not read the contract signed

by him can be no ground for coming into equity to be relieved from its obligations as against innocent third persons. "If this were permitted," says the Supreme Court of the United States, "contracts would not be worth the paper on which they are written." *Upton* v. *Tribilcock*, 91 U. S., 50. And see *Berry* v. *Planter's Bank*, 3 Tenn. Ch., 69. The wife cannot, without more, throw upon an innocent creditor, who has advanced a valuable consideration on the faith of her act, the loss occasioned by her confidence in her husband, and such gross negligence of the most ordinary rule of business. It has been so held by eminent courts, in similar cases to the one before us. *Baldwin* v. *Snowden*, 11 Ohio St., 203; *McHenry* v. *Day*, 13 Iowa, 445.

In this view, it becomes unnecessary to determine whether the husband and wife are competent witnesses, under the act of 1870, ch. 78, sec. 2, T. & S. Rev., sec. 3803*d*, to prove the facts deposed to by them in these suits by and against the executor of Nancy Dalzell. The wife is not entitled to any relief as against the executor, even if the evidence be admitted.

The question remains as to the proper construction of the will under which Netherland and wife claim the property. By the body of the will, made on the 3d of July, 1861, the testator devised to his daughter, Ida Netherland, and her husband, R. G. Netherland, the land in controversy and other property; "all of which property," says the will, "I devise to them to dispose of as they may think proper." In a codicil to the will, executed the next day, the 4th clause is

as follows: " In the devise of my lands to the said Robert G. Netherland and Ida his wife, it is not my intention to make the estate of the said Robert G., in the event he survives the said Ida, a fee simple estate, but he shall hold the same for his natural life only, and, upon his decease, the same shall descend to the children of the said Ida or her heirs at law." The 11th clause of the codicil is in these words: " The said Robert G. Netherland and Ida his wife shall have power during their joint lives to dispose of the lands devised to them, by deed executed by them jointly, and proved and acknowledged according to the law for disposing of the estates of married women."

By the will the husband and wife took but one estate, both being seized of the entirety in fee, the estate continuing in the survivor upon the death of either.  *Taul* v. *Campbell,* 7 Yer., 319; *Berrigan* v. *Fleming,* 2 Lea, 271.  The intention of the testator in the 4th codicil is to reduce the fee of the husband in the land to a life estate in the event he survived his wife, with remainder to the children of the testator's daughter, or her heirs at law as the case may be.  He did not intend to deprive the wife of the estate he had previously given her.  Whether the reduction of the husband's estate would have any and what effect on the estate of the husband and wife by entireties, it is unnecessary to enquire.  For, in any event, the husband and wife are the owners of the whole estate except the remainder in the children of the wife contingent upon the husband surviving the

wife, and the husband and wife, even without the 11th clause of the codicil, could dispose of their interest by joining in a deed of conveyance, with privy examination of the wife. No conveyance of the husband and wife could deprive the children of Ida of their remainder interest, if the rights of the parties depended on the will and the 4th clause of the codicil. The doubt grows out of the 11th clause.

On the part of the creditors it is contended that the 11th clause enlarges the power of the husband and wife so as to enable them, during their joint lives, to dispose of the entire estate in the form prescribed, thereby cutting off the contingent remainder to the children. On the other hand it is argued that the clause restricts the power of disposition to the period of the joint lives of the husband and wife, and to a deed of sale proper, as contradistinguished from a mortgage or trust deed. The language of the clause is to "dispose by deed," which would include any form of deed of conveyance, and there is nothing in the residue of the will disclosing any desire on the part of the testator of depriving either the husband or wife of the power of disposing of their respective interests in the land in any way or for any purpose whatever. The probability is that having given, in the body of the will, property to the daughter and her husband "to dispose of as they may think proper," and having cut down the husband's estate by the codicil, the testator may have thought that a general power of disposition was necessary to enable his daughter to have the full benefit of the fee given to her.

Shields *v.* Netherland.

If the power is restricted to the conveyance merely of the interests of the husband and wife in the land, leaving the contingent remainder in the children unaffected, the clause would have been useless. The husband and wife would have had that power without any provision in the will to that effect. A positive effect can only be given to the clause by allowing to the words used their literal and full meaning, and to construe them as authorizing the disposition of the entire estate in the mode designated.

Something was said by the counsel of the appellee in relation to so much of the decree below as directed the land to be sold by the clerk and master instead of the trustee. The chancellor bases his order on the ground that the trustee can only exercise the power conferred on him in the mode pointed out by the deed, whereas the interests of the parties required a different mode of advertising and selling. We do not understand that the appellants object to this part of the decree, and they alone have appealed. Besides, the beneficiary in the trust having come into equity for the enforcement thereof, the court undoubtedly acquires the right to control the further proceedings with a view to the interest of the makers of the trust as well as the beneficiary, and the exercise of this power rests so much in the discretion of the chancellor, that this court cannot control it except in a plain case of error.

There being no error in the decree, it will be affirmed with costs.