586 A.2d 734

UNITED STATES for the Use of the TRANE COMPANY

v.

Lorna D. BOND.

Misc. No. 10, Sept. Term, 1990.

Court of Appeals of Maryland.

March 5, 1991.

Lawrence S. Jacobs, Bethesda (VanGrack, Axelson, Williamowsky & Jacobs, P.C., Rockville, on brief), for appellant.

Douglas Clark Hollmann (Richard I. Kovelant, Kruger, Kovelant & Hollmann, on brief), Laurel, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

MURPHY, Chief Judge.

This case has been certified to us by the United States District Court for the District of Columbia, pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol.), §§ 12–601—12–609 of the Courts and Judicial Proceedings Article.[1] The question of state law presented is "[w]hether a party whose consent to entering a contract is coerced may assert the defense of duress against a party who neither knew of nor participated in the infliction of the coercive acts."

## I.

The statement of facts outlined by the federal district court in its certification order discloses that Mech–Con Corporation contracted with the United States in Maryland to perform certain work upon the heating and air-conditioning systems at the Walter Reed Army Medical Center in Washington, D.C. Mech–Con, as principal, and Albert Bond and his wife, Lorna Bond, as sureties, executed a payment

---

1. This section provides:
 "The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or the highest appellate court or the intermediate appellate court of any other state when requested by the certifying court if there is involved in any proceeding before the certifying court a question of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this State."

bond to cover labor and materials expended by persons working on the project. Mech–Con and Albert Bond subsequently filed petitions in bankruptcy. When Mech–Con failed to comply with certain provisions of the contract, the United States, as plaintiff (for the use of The Trane Company), sued Lorna Bond as the sole defendant to recover on the payment bond which she had signed as surety. Lorna asserted the defense of duress, contending that she was not liable because Albert "physically threatened her and abused her to coerce her to sign a number of documents, including the payment bond, and would not answer her regarding their content." Lorna made no claim that Albert "actually picked up her hand and forced her to sign the contract"; nor did she claim that the plaintiff "knew of any coercive actions taken by defendant's husband." Lorna nevertheless maintains, in reliance upon our 1862 decision in *Central Bank v. Copeland,* 18 Md. 305, that the plaintiff could not enforce the surety agreement against her because, under Maryland law, a person whose consent to a contract is obtained by duress may assert that defense against the other contracting party, even though that party "neither took part in the infliction of duress nor had any knowledge of it."

The plaintiff's motion for summary judgment was opposed by Lorna, and remains pending. The federal district court, believing that "resolution of this motion raises an unsettled issue of Maryland law," has certified the question for our consideration.

## II.

The United States contends that the defense of duress cannot be asserted by Lorna to avoid liability on the contract between them because the government was not involved in the infliction of the alleged duress and had no knowledge of it. It argues that the defense of duress is only applicable against the party exerting the duress. It acknowledges, however, that duress may in some instances render a contract absolutely void, and that in such circum-

stances even an innocent party may not recover on the contract. The government claims that the alleged duress in this case, as described in the certification order, was insufficient as a matter of law to render the contract void because Lorna was not physically forced to sign the contract. Absent such actual physical compulsion, the government maintains that the contract is not void, but is voidable by the victim only if the other contracting party did not rely to its detriment upon the party's assent to the contract. In other words, the plaintiff argues that where value is given by a contracting party in reliance on the making of the contract, and that party had no knowledge of, or took no part in the exertion of the claimed duress, then the contract is neither void, nor voidable by the alleged victim of the claimed duress. According to the government, nothing in *Central Bank v. Copeland, supra,* requires a different result.

Relying upon *Copeland,* Lorna contends that under Maryland law, duress renders a purported contract void from the beginning, and not merely voidable. She urges that cases in other jurisdictions which hold that the defense of duress cannot be asserted against an innocent contracting party are contrary to *Copeland* and thus are inapposite. Lorna argues that the determination of whether a contract is void turns on whether the duress completely prevented the mutual assent necessary for the formation of a contract, as where the duress forces a person to do an act that the person had no intention of doing, in which event there is no assent and therefore no contract. In making the determination whether she assented to the contract, Lorna suggests that the test is whether the duress exerted upon her amounts to the type of coercion which would make the agreement void, or whether, notwithstanding the coercion, there was an actual expression of assent to the contract. As to this, Lorna asserts that under *Copeland* "the person coerced into executing a contract can raise the defense of duress against a third party who neither participated in nor had knowledge of the coercion."

## III.

In *Copeland,* a wife, together with her husband, executed a mortgage on property owned by the wife to secure a debt owed to the mortgagees by the husband. The mortgagees assigned the mortgage to the Central Bank which subsequently sought to sell the property to satisfy the husband's unpaid debt. The wife challenged the validity of the mortgage, claiming that as to her it was void because she lacked capacity to assent to it. In reviewing the evidence, the Court said that the wife

"had been, and was, at the time of executing the mortgage, much enfeebled in health, and suffering nervous and mental depression, caused in part by the harsh conduct of her husband in reference to the proposed transfer of her property, and that her mind was so distracted, confused and reckless, as to induce the belief on the part of her attending physician, that she was incapable of making a valid deed or contract." *Id.* at 318.

The evidence further disclosed, the Court said, that the wife's execution of the mortgage was "preceded by personal menaces and threats of her husband to destroy the property by fire, if she did not execute it, and the fact that it was executed and acknowledged involuntarily, as a consequence, cannot be doubted." *Id.* at 318–19. The Court determined that the husband's resort "to measures thus violent and harsh, leads irresistibly to the conclusion, that her consent could not have been obtained otherwise." *Id.* at 319.

Further in its opinion, the Court said that, as to the wife, the validity of the mortgage depended upon the fact of its execution and acknowledgment by her "as her own free and voluntary act," but that her acknowledgment that it was her free and voluntary act was not conclusive. *Id.* at 318. Referring to the legislative enactment which prescribed the form of the acknowledgment, the Court said that it was intended "to guard the wife's title to property against the improper efforts of a husband to wrest it from her, and not to bar from judicial remedy, outrages, by which such an

acknowledgment might be extorted." In light of this legislative purpose, the Court explained that a husband "who, by extreme harshness, compels a wife to execute a deed of her property against her will, and then, in the form prescribed by law for her protection, to sanction the wrong inflicted by acknowledging its involuntary execution to be voluntary and without fear, cannot, by reason of the mere formal acknowledgment, entitle himself, nor any one in whose interest such a wrong may be attempted, to set up, and claim upon the deed, as a valid conveyance." *Id.* at 319. In declining to enforce the mortgage against the wife, the court found that the duress exerted upon her by the husband was "so excessive as to subjugate and control the freedom of her will." *Id.*

In the course of its opinion, the Court engaged in the following general discourse of then existing Maryland law:

"The element of obligation upon which a contract may be enforced, springs primarily from the unrestrained mutual assent of the contracting parties, and where the assent of one to a contract is constrained and involuntary, he will not be held obligated or bound by it. A contract, the execution of which is induced by fraud, is void, and a stronger character cannot reasonably be assigned to one, the execution of which is obtained by duress. Artifice and force differ only as modes of obtaining the assent of a contracting party, and a contract to which one assents through imposition or overpowering intimidation, will be declared void, on an appeal to either a court of law or equity to enforce it. The question, whether one executes a contract or deed with a mind and will sufficiently free to make the act binding, is often difficult to determine, but for that purpose a court of equity, unrestrained by the more technical rules which govern courts of law in that respect, will consider all the circumstances from which rational inferences may be drawn, and will refuse its aid against one who, although apparently acting voluntarily, yet, in fact, appears to have executed a contract, with a mind so subdued by harshness, cruelty, extreme

distress, or apprehensions short of legal duress, as to overpower and control the will." *Id.* at 317–18.

In *Whitridge v. Barry*, 42 Md. 140 (1875), a wife alleged that she assigned her interest in an insurance policy under duress by her husband to satisfy certain of his debts. She claimed that she was "laboring under controlling duress, and had not that necessary freedom, in the exercise of her mental faculties, to make the act binding upon her." *Id.* at 152. The wife testified that she was "fearful of the consequences as to [the husband's] future course, if she failed to sign the paper, as he requested." *Id.* at 153. The Court found that because the wife was advised of the poor state of her husband's financial affairs, "was made familiar with his plans and schemes, and fully impressed, by his persistent importunities, with serious apprehension as to his condition," that there existed "such a pressure upon her ... [as] deprived [her] of that moral agency requisite to a binding act, in the conveyance of her policy, and that she ought not to be held responsible therefor." *Id.* at 152–53. The Court concluded that the wife executed the assignment "under duress and compulsion." *Id.* at 153. It held that while "not every degree of importunity ... is sufficient to invalidate an instrument transferring property; yet if it be such as to deprive the party executing it of her free agency; or such as she is too weak to resist, she ought not to be held responsible therefor." *Id.* at 153–54.

In *First National Bank v. Eccleston*, 48 Md. 145 (1878), a husband and wife executed a deed of trust of certain real estate owned by the wife to secure a debt due by the husband to the bank. Subsequently, the court ordered that the land be sold. The wife, following the husband's death, claimed that the deed was void "because she was forced to sign and acknowledge it by the threats, menaces and ill-treatment of her husband, which in her then weak and enfeebled condition of health, she was unable to resist." 48 Md. at 154. Accepting the wife's testimony as worthy of credit, the Court held that the deed was void. It recounted the evidence as follows:

"[A]fter this deed had been prepared, the husband took it to his wife and demanded she should sign it without knowing its contents, telling her it was but a matter of form; that she was then near her confinement, in that condition of health and anxiety which required kindness and sympathy; that upon her expressing an unwilling-ness to sign without some knowledge of what the paper was, he enforced his demand from time to time with curses and oaths, and threats of personal violence, and even of her life, until by these means and the general violence and harshness of his conduct and temper to-wards her and in her presence, he overpowered her will and resistance; and that he then took her to the City of Washington, where she signed and acknowledged the deed before a notary public without knowing what it contained." *Id.* at 160.

Two judges dissented, stating that the majority carried the "supposed precedent [of *Copeland* ] to a most dangerous extent." *Id.* at 163. The dissenting judges declared that the evidence was insufficient to vacate the deed "as having been obtained by threats and coercion." *Id.* at 167.

In *Brown v. Pierce*, 7 Wall. 205, 19 L.Ed. 134, an 1869 decision of the Supreme Court of the United States, a conveyance was held void as against an innocent third party who in good faith gave value where the person conveying title to the property was forced to do so under threats of death or violence. The Court said:

"Actual violence is not necessary to constitute duress ... because consent is the very essence of a contract, and, if there be compulsion, there is no actual consent, and moral compulsion, such as that produced by threats to take life or to inflict great bodily harm ... is everywhere regarded as sufficient, in law, to destroy free agency, without which there can be no contract." 7 Wall. at 214, 19 L.Ed. at 137.

*Accord Baker v. Morton,* 12 Wall. 150, 157–58, 20 L.Ed. 262, 264 (1871).

In *Pierce,* the Supreme Court acknowledged that according to some cases and text writers, "it is only where the threats uttered excite fear of death, or of great bodily harm, or unlawful imprisonment, that a contract, so procured, can be avoided, because, as such courts and authors say, the person threatened with slight injury to the person, or with loss of property, ought to have sufficient resolution to resist such a threat, and to rely upon the law for his remedy." 7 Wall. at 215–16. The Court contrasted this rule with holdings in other cases, specifically mentioning *Copeland,* "that contracts procured by threats of battery to the person, or the destruction of property, may be avoided on the ground of duress, because in such a case there is nothing but the form of a contract, without the substance." *Id.*

Other commentators have noted that at common law, in some circumstances, a contract made under duress could be declared void by the coerced party, even though the duress was not exerted by the other contracting party and that party was unaware of it. 13 *Williston on Contracts,* § 1622A (3rd ed. 1957); J. Calamari and J. Perillo, *Contracts,* § 9–2 (3rd ed. 1987). This indeed was Blackstone's view where the contract was coerced by actual imprisonment or fear of loss of life or limb. *See* 1 *Blackstone's Commentaries* 131 (1897). More specifically, Blackstone stated that "fear of battery ... is no duress; neither is the fear of having one's house burned, or one's goods taken away or destroyed; because in these cases, should the threat be performed, a man may have satisfaction by recovering equivalent damages: but no suitable atonement can be made for the loss of life, or limb." *Id.* Thus, as Williston states at § 1622A, "where duress merely coerces assent it is treated ... like other equitable defenses and cannot be made the basis of attack or defense against one who has acquired legal title to money or tangible property or to a chose in action, for value and in good faith, whether he is the original grantee or promisee or is a purchaser from him."

In *Fairbanks v. Snow*, 145 Mass. 153, 13 N.E. 596, 598 (1887), Justice Holmes, for the court, said that "if the defendant's hand had been forcibly taken and compelled to hold the pen and write her name, the signature would not have been her act, and if the signature had not been her act, for whatever reason, no contract would have been made, whether the plaintiff knew the facts or not." On the other hand, the court said that when "the so-called 'duress' consists only of threats, and does not go to the height of such bodily compulsion as turns the ostensible party into a mere machine, the contract is only voidable." *Id.* For other cases applying these principles, *see, e.g., Regenold v. Baby Fold, Inc.,* 68 Ill.2d 419, 12 Ill.Dec. 151, 160, 369 N.E.2d 858, 867 (1977); *McCoy v. James T. McMahon Const. Co.,* 216 S.W. 770, 771 (Mo.1919); *Sheppard v. Frank & Seder,* 307 Pa. 372, 161 A. 304 (1932); *Standard Finance Co., Ltd. v. Ellis,* 3 Haw.App. 614, 657 P.2d 1056, 1061 (1983). These cases, as well as the *Restatement (Second) of Contracts* §§ 174, 175 (1981), distinguish between duress by physical compulsion, which may render a contract void, and duress by threat, which renders a contract voidable by the victim except where the other party to the contract in good faith, and without reason to know of the duress, either gives value or relies materially on the contract.

As to when duress by physical compulsion prevents formation of a contract, § 174 of the *Restatement* provides:

"If conduct that appears to be a manifestation of assent by a party who does not intend to engage in that conduct is physically compelled by duress, the conduct is not effective as a manifestation of assent."

Comment a to this section states that it applies "to those relatively rare situations in which actual physical force has been used to compel a party to appear to assent to a contract." The result, according to the comment, "is that there is no contract at all or a 'void contract' as distinguished from a voidable one." By way of illustration, the comment states that a void contract is one where the duress

involves physical force in compelling the victim to sign the contract.

As to the distinction between void and voidable contracts, comment b to § 174 states that a victim of duress may be held to have ratified the contract if it is voidable, but not if it is void. The comment further states that a good faith purchaser, on the other hand, "may acquire good title to property if he takes it from one who obtained voidable title by duress but not if he takes it from one who obtained 'void title' by duress." The comment further states that it is immaterial under § 174 whether the duress is exercised by a party to the transaction or by a third person.

Section 175 of the Restatement addresses when duress by threats makes a contract voidable; it states:

"(1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim.

"(2) If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim unless the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the transaction."

Comment a to this section states that the essence of this type of duress is inducement by an improper threat, expressed in words or inferred from words or other conduct. Comment b states that a threat, even if improper, does not amount to duress "if the victim has a reasonable alternative to succumbing and fails to take advantage of it." The comment further states that where a threat is one of minor vexation only, toleration of the inconvenience involved may be a reasonable alternative (this being a mixed question of law and fact). Comment c states that in order to constitute duress, the improper threat must induce the making of the contract; the test is subjective and calls into question whether the threat actually induces assent on the part of

the person claiming to be the victim of duress. As to this, the comment explains that all attendant circumstances must be considered, including such matters as the age, background, and relationship of the parties.

Comment e to § 175 states that if a party's assent has been induced by the duress of a third person, rather than that of the other party to the contract, the contract is nevertheless voidable by the victim, except where "the other party has, in good faith and without reason to know of the duress, given value or changes his position materially in reliance on the transaction." In this connection, comment e states that § 175 does not protect a party "to whom the duress is attributable under the law of agency."

## IV.

In answering the certified question in this case, we consider the principles enunciated in *Copeland* and its progeny, all of which were decided between 1862 and 1878, as well as the later formulation outlined in the Restatement (Second) of Contracts, *supra*. In this regard, in *Food Fair Stores v. Joy*, 283 Md. 205, 389 A.2d 874 (1978), we considered the contention that a release of civil liability of a store owner, signed by a defendant criminally accused of shoplifting in consideration of the entry of a nolle prosequi, was executed under duress. We there noted that the "early test," applied in *Copeland*, 18 Md. at 319, was whether execution of the document had been "induced by harshness and threats, and the exercise of an unwarrantable authority, so excessive as to subjugate and control the freedom of [the signatory's] will." We next referred to the definition of "duress," as outlined in § 492 of the first Restatement of Contracts (1932), under which courts placed primary emphasis, "on the effect of the wrongful act or threat upon the person claiming to have been ... coerced." 283 Md. at 218, 389 A.2d 874. The controlling factor under the first Restatement formulation, we recognized, was the condition, at the time, of the mind of the person subjected to the alleged coercive measures—an essentially subjective test. *Id.* Thus, under

§ 492 of the first Restatement, the decisive question was "whether the person claiming duress entered the particular transaction in such fear as to preclude his exercise of free will and judgment." *Id.* We then observed that under the formulation of the second Restatement, there had been a "marked shift in emphasis from the subjective effect of a threat to the nature of the threat itself"; we noted that the earlier requirement of the first Restatement "that the threat aroused such fear as to preclude an exercise of 'free will and judgment'" was omitted in the Restatement (Second) of Contracts " 'because of its vagueness and impracticability.' " *Id.* We concluded in *Food Fair Stores* that, without regard to which test was applied, the release was not the product of duress as a matter of law.

Nothing in *Copeland* or *Eccleston* adopted the principle that *mere* threats, if succumbed to by the victim, rendered a contract void without regard to innocent third parties who neither knew of nor participated in the infliction of the coercive acts. Rather, these early cases, without distinguishing between physical compulsion and threats of violence, turned on the Court's view of the intensity of the duress exerted upon the victim as it impacted on the victim's will to resist. There is no indication in these cases that the Court rejected the common law rule enunciated by Blackstone, which encompassed threats sufficient to place the victim in fear of actual imprisonment or loss of life or limb for failure to sign the contract.

 Necessarily, the determination of duress is dependent upon the circumstances of each individual case. To the extent that the second Restatement suggests in § 174 that only physically applied force to directly compel the victim to execute the document will suffice to vitiate a contract as to innocent third parties, we reject such an inflexible rule. Rather, we think it is presently the law of Maryland that a contract may be held void where, in addition to actual physical compulsion, a threat of imminent physical violence is exerted upon the victim of such magnitude as to cause a reasonable person, in the circumstances, to fear loss of life,

or serious physical injury, or actual imprisonment for refusal to sign the document. In other words, duress sufficient to render a contract void consists of the actual application of physical force that is sufficient to, and does, cause the person unwillingly to execute the document; as well as the threat of application of immediate physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death, serious personal injury, or actual imprisonment.

■ As earlier indicated, the certified facts before us indicate, without specificity, that Lorna was "physically threatened ... and abused" to coerce her signature as a surety on the payment bond. It is for the District Court, within the framework of the law of this State as set forth in this opinion, to apply that law to the facts of the case in determining whether, as to Lorna, the contract was void for duress. If the contract is not void, but at most only voidable, Lorna may not vitiate it as against an innocent third party.

CERTIFIED QUESTION ANSWERED AS HEREIN SET FORTH; COSTS IN THIS COURT TO BE EQUALLY DIVIDED.