NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 131

No. 2014-301

| | |
|---|---|
| EverBank, Successor by Assignment to Bank of America, N.A. | Supreme Court |
| | On Appeal from |
| v. | Superior Court, Addison Unit, Civil Division |
| Gary Marini and Caroline Marini | February Term, 2015 |

Robert A. Mello, J.

Steven J. Kantor of Doremus Kantor & Zullo, Burlington, and Richard E. Briansky of
  McCarter & English LLP, Boston, Massachusetts, for Plaintiff-Appellant.

Lisa Chalidze, Fair Haven, for Defendant-Appellee Caroline Marini.

Gary P. Marini, Pro Se, Middlebury, Defendant-Appellee.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **EATON, J.** This appeal stems from a decision of the Addison Superior Court, Civil Division, granting summary judgment in favor of defendant Caroline Marini on plaintiff EverBank's complaint for foreclosure on a mortgage that Caroline signed in 2009 together with her co-defendant and then-husband Gary Marini.[1] In ruling on cross-motions for summary judgment, following a hearing, the trial court concluded that Caroline was entitled to judgment as

---

[1] For ease of reference, we refer to the Marinis by their respective first names throughout this opinion.

a matter of law on EverBank's foreclosure complaint because the undisputed material facts established that Caroline signed the mortgage under the threat of physical violence from Gary and thus the mortgage was void as to her. The trial court also concluded that regardless of whether the mortgage was void as to Caroline, EverBank was not a bona fide purchaser. EverBank subsequently moved to alter or amend the judgment, pursuant to Vermont Rule of Civil Procedure 59(e), on the ground that the grant of summary judgment as to Caroline unjustly enriched her. The trial court denied the motion, explaining that EverBank had not raised the issue of unjust enrichment in response to Caroline's cross-motion for summary judgment. EverBank appeals both decisions. We reverse the decision granting summary judgment in favor of Caroline on the issue of whether the mortgage is void, and direct the trial court to enter judgment for EverBank on that issue. We remand for trial the issues of whether the mortgage is voidable and, if so, whether it is enforceable because it was ratified by Caroline, but affirm the trial court's decision that the bona fide purchaser doctrine is not available to EverBank. Further, although we conclude that the trial court did not abuse its discretion in denying EverBank's rule 59(e) motion, as a result of vacating the underlying judgment, we conclude that the matter is no longer germane.

¶ 2. The record developed before the civil division reveals the following facts. In June 2005, Caroline and Gary Marini purchased a family home in the Town of Middlebury, secured by a mortgage, and properly recorded the deed with the Middlebury town clerk's office. Several years later, in early 2009, Gary began contemplating borrowing money against the Middlebury home. Caroline, however, believed that borrowing more money against their home was "financially unhealthy" for their family, and opposed the idea.

¶ 3.    Several months later, in early-March 2009, Caroline became aware that Gary had been communicating with Quicken Loans Inc. about the possibility of additional loans. Caroline contacted the person at Quicken with whom Gary had been communicating and informed him that their "debt to income ratio was impossible and that another loan was not in [her] best interest." The Marinis did not secure a loan with Quicken.

¶ 4.    Around the same time, Caroline and Gary spoke with an attorney about the possibility of debt restructuring. Gary, however, was "adamantly opposed" to the idea of bankruptcy, and following the meeting with the attorney, "was highly emotional and upset," and "expressed thoughts of suicide repeatedly over the following days and weeks." At some point thereafter, Gary told Caroline that he would mortgage the family home "whether [she] liked it or not," and regardless of whether she agreed.

¶ 5.    Shortly thereafter, in mid-March 2009, Gary again sought to apply for an additional loan, this time through LendingTree Loans. When Caroline found out that Gary was once again attempting to secure a loan against the family home, she contacted LendingTree and informed a loan officer there that she did not want the loan, that she and Gary were in marital counseling, and that the mortgage was "a very bad thing for [them]." The LendingTree loan officer advised Caroline not to sign the mortgage documents, and stated that she would stop the process if the mortgage was not in Caroline's best interests. Notwithstanding these initial conversations, the loan officer subsequently informed Caroline that the loan application had already entered underwriting and that she was unable to stop it at that point.

¶ 6.    Around April 3, 2009, Gary informed Caroline that a notary would come to the house that weekend to witness her signature on the mortgage documents. Caroline told Gary that she would not sign. On April 5, 2009, the LendingTree notary called the Marini household to

confirm the appointment. Caroline answered the call and told the notary that she disagreed with the loan and that she would not sign. The LendingTree notary did not come to the Marini house.

¶ 7. In the evening of April 5, 2009, LendingTree sent Gary an email, informing him that it had "just received confirmation from [its] notary service that [Caroline] has cancelled this transaction. Please advise. Under VT state laws, she would have needed to sign documents as well and she is refusing to at this point." Upon receipt of the email, Gary became "extremely angry." Gary brought Caroline and two of their children, ages eight and nineteen, into the kitchen and made them sit at the kitchen table while he berated Caroline, repeatedly stating that she was not a competent adult, that the children were no longer to consider her an adult, and that he was going to divorce her. Gary then removed a pair of large scissors from the knife drawer and waved them back and forth while repeating that Caroline was incompetent. Caroline was frightened for her and her children's physical safety, and told Gary that she would sign the mortgage documents if he would leave the children alone.

¶ 8. The following evening, a LendingTree notary came to the Marini home to witness Caroline's signature on the mortgage documentation. When the notary asked Caroline if her signature was her free act and deed, she replied, "it is what it is." At some point on that same day, Gary also executed a note payable to the order of "Home Loan Center, Inc., dba LendingTree Loans, a California Corporation" in the principal amount of $311,200.00. The mortgage granted Mortgage Electronic Registration System, Inc. (MERS), as nominee for LendingTree, a security interest in the Marini's Middlebury home and was recorded with the Middlebury town clerk's office on April 15, 2009. Although Caroline signed the mortgage paperwork, she did not sign the note; however, the mortgage names both Caroline and Gary as "borrowers" with LendingTree as the "lender," and MERS acting as the nominee for

4

LendingTree. A portion of these loan proceeds were used to refinance the existing debt on the Marinis' Middlebury home and discharge the underlying mortgage, approximately $40,000 went to paying off some of Gary's Bank of America credit card debt, and another portion stayed with Gary in cash.

¶ 9. Almost immediately after the Marinis signed the loan and mortgage paperwork with LendingTree in April 2009, LendingTree assigned the rights to both instruments to Bank of America, N.A., successor by merger to Countrywide Home Loans, Inc. Around the end of November 2009, Caroline became aware of the assignment, and contacted Bank of America in an attempt to explain that she had "disagreed with the loan" and to "register [her] position that the loan was not what [she] wanted and what they had done was wrong." The representative from Bank of America with whom she spoke informed her that only Gary was listed on the loan documents and therefore the representative could not talk to Caroline about it.

¶ 10. Thereafter, around April or May 2011, the Marinis stopped making monthly payments on the loan and defaulted. In anticipation of the impending foreclosure, MERS assigned the mortgage to Bank of America, which initiated the foreclosure action in the Addison Superior Court, Civil Division on December 3, 2012. On December 31, 2012, Caroline filed a verified answer; Gary did not answer until May 13, 2013. In her verified answer, Caroline asserted the affirmative defense of duress, contending that the mortgage was void as to her because she had "signed the Mortgage Deed under duress, namely, implicit threat by [Gary] of physical harm with a sharp object in the presence of her children." Additionally, Caroline argued that the mortgage was voidable as to her, alleging duress arising from her "desire to protect her children from further exposure to parental disagreement, to protect herself from further humiliation, and continuing verbal pressure to burden the house with further debt."

5

Caroline also filed a counterclaim, alleging that the loan had been "negligently underwritten and secured, directly, proximately and foreseeably causing depletion of [Caroline's] resources" and that her financial woes had been exacerbated by this negligence.

¶ 11.   On May 21, 2013, more than five months after Caroline answered, Bank of America moved for summary judgment against Caroline, and judgment for foreclosure by sale.[2] Bank of America's motion for summary judgment did not address Caroline's counterclaim or affirmative defense of duress, nor did it indicate there were any factual disputes regarding Caroline's filings.  In early July 2013,[3] Caroline opposed Bank of America's motion and cross-moved for summary judgment in her favor, arguing that she was entitled to judgment as a matter of law because the undisputed material facts showed that she signed the mortgage under the threat of violence and thus it was void as to her.  The trial court set the pending motions for hearing on December 6, 2013.  During this interval, Bank of America neither filed an opposition to Caroline's cross motion nor filed a statement of disputed material facts.  On November 13, 2013, Bank of America moved to substitute EverBank as a party, as both the mortgage and the note had been assigned to EverBank on July 15, 2013.

¶ 12.   On December 6, 2013, the trial court held a hearing on the pending cross motions for summary judgment, at which counsel for Bank of America, Caroline with her counsel, and Gary appeared.  At the start of the hearing, the trial court heard first from counsel for Bank of America, who set forth that the bank was "simply seeking a judgment for foreclosure," noting

---

[2]   On May 21, 2013, Bank of America also moved for default judgment against Gary; however, because Gary had filed his answer on May 13, 2013, the trial court denied the motion for default judgment.  Thereafter, on July 1, 2013, Bank of America moved for summary judgment against Gary, which the trial court granted in its May 5, 2014 decision and order.  Gary has not appealed that decision, and it is not before us on this appeal.

[3]   At a status conference on June 14, 2013, the trial court extended Caroline's time to respond to Bank of America's motion for summary judgment.

that it had provided the requisite documentation and that there had been a default and no payments for some time. Counsel for Caroline spoke next, setting forth her position that Caroline signed the mortgage under duress from Gary and thus the mortgage was void as to her. Counsel for Caroline and the trial court both noted that neither Gary nor Bank of America had disputed Caroline's version of the facts or responded to her cross motion for summary judgment. Counsel for Caroline offered, however, to allow Bank of America additional time to respond to her cross motion. When the trial court inquired with Gary whether he agreed with Caroline's recitation of the facts, he responded:

> Yes. Quite frankly, I was very surprised that the notary accepted it based on the statement of saying "it is what it is." There was clearly no desire to sign that mortgage. And, in all honesty, that was probably the basis of our subsequent divorce over this issue. You know, clearly, she was not a willing signer to this mortgage.

Upon the trial court inquiring as to whether Gary "forced her to sign" the mortgage documents, the following exchange occurred:

> [Gary]: I—yeah, I'm not a violent person, but I can't speak for how she perceived—I was very angry, you know, on what was going on at the time.
>
> [Judge]: So you forced her to sign it?
>
> [Gary]: I guess I did from that standpoint because I was very angry. I didn't physical[ly] put her hand on the paper, but I was very angry.

At this point, the trial court asked counsel for Bank of America what he wanted to do, to which he responded that Gary's statement was "obviously an interesting admission" and that he had misunderstood Caroline's filings to be simply an opposition to Bank of America's motion for summary judgment. With no objection from Caroline, the trial court granted Bank of America additional time to respond. Thereafter, Bank of America filed its opposition in February 2014 to which Caroline responded with a supplemental affidavit in support of her cross motion.

7

¶ 13.    In an order dated May 5, 2014, the trial court granted Bank of America's motion to substitute EverBank as a party and granted Caroline's cross motion for summary judgment. The trial court concluded that the undisputed facts showed that Caroline had been subjected to duress such that the mortgage was void and was therefore entitled to judgment as a matter of law. The trial court also concluded that "the outcome in this case would not change even if the Court were to conclude that [Caroline's] coerced signature on the Mortgage Deed rendered the Mortgage only voidable" for two reasons.  First, EverBank had offered no evidence that the mortgage had been ratified by Caroline.  Second, EverBank was on constructive, if not actual notice of Caroline's duress claim, first raised in December 2012, when it acquired its interest in the mortgage from Bank of America in July 2013 and therefore was not a bona fide purchaser such that the recent assignment to EverBank would not preclude the defense of duress. EverBank subsequently filed a Rule 59(e) motion to alter or amend, contending the trial court did not consider the issue of unjust enrichment.  The trial court denied the motion, noting that EverBank had not raised the issue of unjust enrichment in response to Caroline's filings and that it would not "address issues not raised prior to the entry of judgment."  This appeal followed.

¶ 14.    On appeal, EverBank raises four claims of error: (1) the trial court erred in concluding that the mortgage was void as to Caroline because she was not physically compelled to sign the mortgage documentation; (2) the trial court erred in concluding that Caroline could avoid the mortgage even though she accepted its benefits; (3) the trial court erred in concluding that the bona fide purchaser doctrine was not available to EverBank; and (4) the trial court abused its discretion in denying EverBank's Rule 59(e) motion to alter or amend the judgment.

¶ 15.    "We review summary judgment rulings de novo, using the same standard as the trial court."  Gauthier v. Keurig Green Mountain, Inc., 2015 VT 108, ¶ 14, ___ Vt. ___,

___ A.3d ___. "Summary judgment is appropriate only where, accepting the allegations of the nonmoving party as true, there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Farnham v. Inland Sea Resort Props., Inc., 2003 VT 23, ¶ 6, 175 Vt. 500, 824 A.2d 554 (mem.); see also V.R.C.P. 56(a). "In examining the record, the nonmoving party receives the benefit of all reasonable doubts and inferences." Gauthier, 2015 VT 108, ¶ 14 (quotation omitted).

¶ 16. We first address EverBank's argument that the civil division erred in concluding that the mortgage was void as to Caroline as a matter of law. Given our posture in reviewing a decision on summary judgment, the question for our resolution is whether the undisputed material facts, based on the record as developed before the civil division and with all reasonable inferences and doubts resolved in favor of EverBank, compels a conclusion as a matter of law that the mortgage was void as to Caroline. For the reasons that follow, we conclude they do not. When considering the evidence in the light most favorable to Caroline, we conclude that EverBank is entitled to judgment in its favor on the void-mortgage issue and that its motion for summary judgment should have been granted to that extent.

¶ 17. Resolution of this question requires us first to examine the defense of duress to the formation of a contract. "It is, of course, a basic tenet of the law of contracts that in any agreement . . . there must be mutual manifestations of assent or a 'meeting of the minds' on all essential particulars." Evarts v. Forte, 135 Vt. 306, 309, 376 A.2d 766, 768 (1977); see Restatement (Second) of Contracts § 17(1) (1981) (setting forth, in relevant part, basic principle in contract law that "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange"). In other words, "[t]he parties must agree to the same thing in the same sense." Evarts, 135 Vt. at 309, 376 A.2d at 768.

¶ 18.   Generally speaking, improper pressure during the bargaining process, i.e., duress, operates to undermine a party's manifestation of assent and thus undermines one of the foundational cores of any agreement.  See Restatement (Second) of Contracts ch. 7, topic 2, intro. note; 28 Williston on Contracts § 71:8 (4th ed., 2015) ("Duress, like . . . other invalidating causes, may completely prevent the mutual assent necessary for the formation of a contract . . . , or, as is more frequently the case, may be merely a ground for allowing the avoidance of a bargain by its victim, whose expression of mutual assent was improperly obtained.").  The specific question for our resolution on appeal is when that improper pressure is of such a quality that it makes an agreement "void," which is to say there effectively never was an agreement at all, and when it makes an agreement merely "voidable," which allows a victim of duress to subsequently repudiate and thus avoid the consequences of the agreement.  The distinction between a "void" contract and a "voidable" contract is not simply a theoretical exercise; indeed, it has important potential consequences because, "[f]or example, a victim of duress may be held to have ratified the contract if it is voidable, but not if it is void" and "a good faith purchaser may acquire good title to property if he takes it from one who obtained voidable title by duress but not if he takes it from one who obtained void title by duress."  Restatement (Second) of Contracts § 174 cmt. b.

¶ 19.   The parties agree, in essence, to this basic formulation—that duress can take two forms and that the impact on the validity of the underlying agreement varies depending on which applies.  The parties also agree that duress by "physical compulsion" renders an agreement "void."  The parties disagree, however, as to precisely what constitutes "physical compulsion." EverBank contends that only where one person physically compels another to give apparent consent, such as by manually forcing the victim to sign a document, is there no true expression

10

of assent such that the purported agreement is void. Anything short of that, EverBank argues, does not prevent the victim from forming actual intent to be bound to the agreement, albeit an intent induced by improper means, although the circumstances of the agreement may create an inequity such that the agreement is later voidable by the victim. To this end, EverBank appears to concede that the civil division's alternative conclusion was correct that, even if the mortgage was not void, it was voidable by Caroline.

¶ 20. Caroline argues that EverBank's formulation of "physical compulsion" is underinclusive. She asserts that in addition to "actual physical compulsion," i.e., manually forcing the victim to sign, the threat of application of immediate physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death, serious personal injury, or actual imprisonment, is sufficient to render an agreement void from the start. See United States ex rel. Trane Co. v. Bond, 586 A.2d 734, 740 (Md. 1991) (finding in addition to physical force, duress sufficient to render contract void consists of "the threat of application of immediate physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death, serious personal injury, or actual imprisonment."). To that end, Caroline suggests that the lethal force inherent in items such as guns, knives, scissors, baseball bats, fireplace pokers, or poison darts are all "sufficient to render the frightened victim 'a mere mechanical instrument' " and thus render a contract void for lack of mutual assent.

¶ 21. This Court has not yet been called upon to define the precise parameters of the defense of duress. The closest we came was in Quazzo v. Quazzo, 136 Vt. 107, 386 A.2d 638 (1978). In that case, the facts of which are similar to the case at bar, the trial court found that because the wife had signed a note and a mortgage due to her husband's threats, conduct, and misrepresentations, she had executed the documents under duress and the documents were

11

therefore unenforceable.  Id. at 113, 386 A.2d at 642.  The opinion in Quazzo, however, sheds little light on the distinction between void and voidable agreements because the Quazzo Court expressly noted it did not need to reach the issue because the party seeking to enforce the documents against the wife was not a holder in due course.  Therefore, the defense of duress was not cut off even if the alleged conduct was found to be merely voidable.  Id. at 112-13, 386 A.2d at 641.  The only question for the Quazzo Court's review was whether the trial court's finding of duress was supported by the evidence.  On examination of the record, the Court concluded that it was because the husband had threatened to "drop [his wife] out the window, to smash her face, and to terminate the marriage" unless she signed the documents and that only "after a weekend of this constant haranguing and in an effort solely to preserve [their] marriage for [their] children's sake" did the wife sign.  Id. at 113, 386 A.2d at 642 (quotation omitted).  Because the finding of duress was not clearly erroneous, the Court affirmed it, noting "it is clearly duress, as a wrongful act compelling assent to a transaction without the volition of the actor."  Id. at 113-14, 386 A.2d at 642 (citing Restatement (First) of Contracts § 492(a) (1932)).

¶ 22.    Since our decision in Quazzo in 1978, the second edition of the Restatement of Contracts was published in 1981.  The Restatement (Second) of Contracts, chapter 7, topic 2, addresses the concept of "duress and undue influence" and discusses at length the two forms of duress noted above—duress by physical compulsion, which renders an agreement void, see id. § 174, and duress by improper threat, which results in an agreement that is voidable by the victim, see id. §§ 175, 176.  The introductory note explains the basic distinction between the two as follows:

> In one, a person physically compels conduct that appears to be a manifestation of assent by a party who has no intention of engaging in that conduct.  The result of this type of duress is that the conduct is not effective to create a contract.  In the other, a

person makes an improper threat that induces a party who has no reasonable alternative to manifesting his assent. The result of this type of duress is that the contract that is created is voidable by the victim. This latter type of duress is in practice the more common and more important.

Id. ch. 7, topic 2, intro. note.

¶ 23. As to duress by physical compulsion, the Restatement provides the general formulation: "If conduct that appears to be a manifestation of assent by a party who does not intend to engage in that conduct is physically compelled by duress, the conduct is not effective as a manifestation of assent." Id. § 174. In other words, this section

> involves an application of [the principle that a party's conduct is not effective as a manifestation of the party's assent if the party does not intend to engage in it] to those relatively rare situations in which <u>actual physical force</u> has been used to compel a party <u>to appear to assent</u> to a contract.

Id. cmt. a (emphasis added). "The essence of this type of duress is that a party is compelled by physical force to do an act" that the party has no intention of doing; the party is therefore "a mere mechanical instrument" with the result being that "there is no contract at all, or a 'void contract' as distinguished from a voidable one." Id. The following illustration is provided:

> 1. A presents to B, who is physically weaker than A, a written contract prepared for B's signature and demands that B sign it. B refuses. A grasps B's hand and compels B by physical force to write his name. B's signature is not effective as a manifestation of his assent, and there is no contract.

Id. cmt. a, illus. 1.

¶ 24. As to duress by improper threat, the Restatement provides a two-prong test: "[i]f a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." Id. § 175(1). Thus, there must be both an inducement by an "improper threat" and the victim must have no "reasonable alternative" but to succumb. A threat is improper if "what is threatened is a crime or

a tort." Id. § 176(1)(a); id. cmt. b ("A threat is improper if the threatened act is a crime or a tort, as in the traditional examples of threats of physical violence and of wrongful seizure or retention of goods. Where physical violence is threatened, it need not be to the recipient of the threat, nor even to a person related to him, if the threat in fact induces the recipient to manifest his assent."). Such a threat "may be expressed in words or it may be inferred from words or other conduct. Past events often import a threat." Id. § 175 cmt. a. Improper threats do not constitute duress, however, "if the victim has a reasonable alternative to succumbing and fails to take advantage of it." Id. cmt. b. This standard does not require that "the threat must arouse such fear as precludes a party from exercising free will and judgment or that it must be such as would induce assent on the part of a brave man or a man of ordinary firmness"; rather, "[t]he rule stated in this Section omits any such requirement because of its vagueness and impracticability" and "[i]t is enough if the threat actually induces assent on the part of one who has no reasonable alternative." Id. "The standard is a practical one under which account must be taken of the exigencies in which the victim finds himself." Id. The Restatement provides the following relevant illustrations:

> 1. A is a good faith purchaser for value of a valuable painting stolen from B. When B demands the return of the painting, A threatens to poison B unless he releases all rights to the painting for $1,000. B, having no reasonable alternative, is induced by A's threat to sign the release, and A pays him $1,000. The threatened act is both a crime and a tort, and the release is voidable by B.

> 2. A threatens B that he will kill C, an employee of B, unless B makes a contract to sell A a tract of land that B owns. B, having no reasonable alternative, is induced by A's threat to make the contract. The threatened act is both a crime and a tort, and the contract is voidable by B.

Id. § 176, cmt. B, illus. 1, 2.

¶ 25. In sum, under the Restatement, the fundamental distinction between the two varieties of improper conduct hinges on whether an actual manifestation of assent to enter a

14

binding agreement existed at the time the victim signed or entered the agreement. Both varieties recognize that the manifestation of assent is flawed, but in the "voidable" context, the assent itself is compelled by circumstances that remove any reasonable alternative; in the "void" situation, there is but a shell of a manifestation of assent to enter an agreement as the victim was the conduit through which the hand of the wrongdoer acted. We generally agree with these distinctions and this approach. We have often relied upon and adopted various provisions within the Restatement (Second) of Contracts, see, e.g., Record v. Kempe, 2007 VT 39, ¶¶ 15-20, 182 Vt. 17, 928 A.2d 1199; LoPresti v. Rutland Reg'l Health Servs., Inc., 2004 VT 105, ¶¶ 35-36, 177 Vt. 316, 865 A.2d 1102; Remes v. Nordic Grp., Inc., 169 Vt. 37, 41, 726 A.2d 77, 80 (1999), and we do so again here. We agree that the Restatement (Second) of Contracts sets out an appropriate general framework to differentiate between the two varieties of improper conduct and their attendant impacts on and consequences for the bargaining process and, except as is discussed below with respect to physical compulsion, we adopt the legal standards of duress as set forth in §§ 174-176.[4] Thus, in general, where one party is but a conduit through which an

---

[4] Numerous other states have also either relied upon or expressly adopted the legal standards of duress as set forth in the Restatement (Second) of Contracts. See, e.g., Int'l Paper Co. v. Whilden, 469 So. 2d 560, 562-63 (Ala. 1985) (relying upon Restatement (Second) of Contracts in discussion of what constitutes "economic duress"); Vail/Arrowhead, Inc. v. Dist. Ct. for Fifth Judicial Dist., Eagle Cnty., 954 P.2d 608, 612-13 (Colo. 1998) (en banc) (expressly adopting relevant portions of Restatement (Second) of Contracts in analyzing "whether a unilateral act such as a disclaimer of interest is voidable on the grounds of duress"); Balogh v. Balogh, 332 P.3d 631, 646 (Haw. 2014) ("It is well established that an agreement is voidable due to duress when a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." (quotation omitted)); City of Asbury v. Iowa City Dev. Bd., 723 N.W.2d 188, 200 (Iowa 2006) ("We follow the Restatement's rule concerning the effect of duress on the enforceability of a contract . . . ."); Trane, 586 A.2d at 738-40 (adopting Restatement (Second) of Contracts § 174 as to what renders agreement void, but modified such that "duress sufficient to render a contract void consists of the actual application of physical force that is sufficient to, and does, cause the person unwillingly to execute the document; as well as the threat of application of immediate physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death,

15

individual physically compels a victim to appear to manifest assent, one of the fundamental pillars of contract formation is fatally flawed and the agreement is void. On the other hand, where a party's manifestation of assent is unwillingly made but is induced by improper means without the victim having a reasonable means of avoidance, the agreement is subsequently voidable by the victim.

¶ 26.  But this does not end our inquiry as it does not address whether the meaning of "physical compulsion" encompasses the sort of conduct Caroline argues that it should. As is clear from the above, the Restatement draws a seemingly clear line between a person manually manipulating a victim to appear to endorse an agreement and a person cajoling a victim through tortious or criminal behavior to actually endorse the same. What the Restatement does not explicitly address is the sort of immediately present lethal tortious or criminal behavior that Caroline argues effectively creates the same result as a situation involving the manual manipulation of a victim's hand. That is, according to Caroline, there is no meaningful distinction between a person with a gun to her head or a knife to her throat and a person of weaker physical ability who has her hand physically manipulated by a stronger person. To the extent that the Restatement does address this sort of potentially lethal conduct, it appears to consider it within the realm of conduct that would render an agreement voidable, but not void. See Restatement (Second) of Contracts § 176 cmt. b illus. 2.

¶ 27.  In <u>Trane</u>, the case cited by both the trial court and Caroline in support of the conclusion that Gary's actions resulted in a void contract as a matter of law, the Maryland Court of Appeals adopted, in part, the Restatement (Second) of Contracts' formulation of the defense

---

serious personal injury, or actual imprisonment"); <u>Andreini v. Hultgren</u>, 860 P.2d 916, 920-21 (Utah 1993) (expressly adopting Restatement (Second) of Contracts' standards of duress).

16

of duress. The court concluded, nonetheless, after a review of relevant Maryland case law on the question presented, that under Maryland law:

> [A] contract may be held void where, in addition to actual physical compulsion, a threat of imminent physical violence is exerted upon the victim of such magnitude as to cause a reasonable person, in the circumstances, to fear loss of life, or serious physical injury, or actual imprisonment for refusal to sign the document. In other words, duress sufficient to render a contract void consists of the actual application of physical force that is sufficient to, and does, cause the person unwillingly to execute the document; as well as the threat of application of immediate physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death, serious personal injury, or actual imprisonment.

Trane, 586 A.2d at 740. Other commentators have noted that situations involving the immediate application of lethal force, such as the proverbial gun to the head, have no meaningful distinction from a situation where a stronger individual grabs a victim's hand and physically compels the victim to appear to manifest assent. As is explained in Williston on Contracts, in discussing the sort of improper behavior that would render a contract void under the Restatement (Second) of Contracts:

> A similar outcome should occur where the physical force or compulsion is somewhat more remote, though no less compelling, as where the victim is forced to sign a document reflecting a bargain at gunpoint; here, too, although the act appears to be that of the victim, it is no more voluntary or intentional than where the coercing party actually manipulates the victim's arm.

28 Williston on Contracts, supra, § 71:1. We agree with this reasoning. Thus, we conclude that in addition to "actual physical compulsion" as discussed in the Restatement, i.e., grabbing the hand of the victim and forcing the victim to appear to manifest assent, a contract may also be held void where "a threat of imminent physical violence is exerted upon the victim of such

17

magnitude as to cause a reasonable person, in the circumstances, to fear loss of life, or serious physical injury . . . for refusal to sign the document." Trane, 586 A.2d at 740.[5]

¶ 28. We therefore conclude that under Vermont law, improper conduct sufficient to render a contract void, as opposed to voidable, consists of the actual application of physical force that is sufficient to, and does, cause a victim to appear to assent to the execution of a document, as well as the threat of immediate application of physical force sufficient to place a person in the position of the signer in actual, reasonable, and imminent fear of death or serious personal injury. In the absence of the application of physical force, it is the immediacy of the threat of the application of the significant physical force which leaves the signer with no reasonable choice except to sign the document. We recognize, of course, that there is an overlap between what the Restatement deems to be conduct rendering an agreement voidable and conduct that we hold today renders a contract void. "Necessarily, the determination of duress is dependent upon the circumstances of each individual case," id., and we have no doubt that our courts are capable of distinguishing between the varieties of improper conduct.

¶ 29. In this case, the undisputed facts before the trial court on the parties' cross motions for summary judgment reveal that, leading up to Caroline's signing of the mortgage, Gary and Caroline's financial situation had been tenuous, and it was taking a tremendous toll on them individually and as a couple. Gary had made repeated attempts at securing a loan, mostly arranged without Caroline's involvement or knowledge, and Caroline, upon discovery, had routinely thwarted his attempts by, for example, contacting would-be lenders directly to get them to stop the loans and by telling the notary from LendingTree not to come. Gary had also

---

[5] Because it was not argued nor briefed, and it is unnecessary for resolution of the instant appeal, we do not address the other situation discussed in Trane, that of fear of "actual imprisonment."

18

threatened to mortgage the family home "whether [Caroline] liked it or not," and regardless of whether she agreed. Finally, on the evening prior to Caroline signing the mortgage paperwork, and after Caroline had again intervened to stop Gary's attempt at securing a loan, Gary had brought Caroline and their two children into the kitchen and made them sit at the kitchen table while he berated Caroline, repeatedly stating that she was not a competent adult, that the children were no longer to consider her an adult, and that he was going to divorce her. He then removed a pair of large scissors from the knife drawer and waved them back and forth while repeating that Caroline was incompetent. This scared Caroline and, in an attempt to protect her children, she told Gary that she would sign the mortgage documents if he would leave the children alone, which she did the following day in front of a notary public.

¶ 30. Even under this expanded definition of "physical compulsion," the mortgage is not void as to Caroline as a matter of law. Nothing in the record indicates, nor does Caroline argue, that Gary overpowered Caroline and manually manipulated her hand to appear to assent. Nor does the record reveal any evidence of a threat of imminent physical violence upon Caroline such that she reasonably feared loss of life or serious physical injury at the time she signed the document, which was the day following the incident with the scissors. Although the facts present a tense situation the night prior to Caroline signing, Gary's conduct in waving the scissors and threatening to divorce Caroline if she would not sign, while obviously threatening and dangerous to some degree at the time of the conduct, was removed in time and context from Caroline's signing of the mortgage paperwork itself the next day in front of an independent person. Accordingly, the civil division erred in concluding that the undisputed material facts compelled the conclusion that the mortgage was void as a matter of law as to Caroline. We therefore reverse the trial court's decision that the mortgage was void.

19

¶ 31. Although EverBank appears to accept that the record establishes that Gary's conduct around the time Caroline signed the mortgage renders the mortgage voidable, and thus argues that the civil division erred in its ratification analysis, our review of the record leads us to a different conclusion. For summary judgment purposes, the record is insufficient to compel a conclusion as a matter of law that the mortgage was voidable by Caroline for improper threat. As noted above, to constitute improper conduct such that an agreement can be held voidable, there must be both an inducement by an "improper threat" and the victim must have no "reasonable alternative" but to succumb. In this case, even though Gary's scissor waving the night prior to Caroline signing the mortgage constitutes an improper threat as contemplated by the Restatement, see Restatement (Second) of Contracts § 176 (defining "when a threat is improper"), the record is devoid of any evidence that Caroline was without a reasonable alternative but to succumb. In this case, the improper threat occurred the night before Caroline actually signed her name to the mortgage document, and there is no indication in the record at all that the threat was so persistent that it continued through that time nor is there any indication at all that Caroline was without ability to exfiltrate herself from Gary's control. Construing the record in favor of EverBank as we must, see Gauthier, 2015 VT 108, ¶ 14 (stating that nonmoving party receives benefit of all reasonable doubts and inferences), we cannot conclude that the undisputed facts establish as a matter of law that Caroline was subjected to an improper threat for which she had no reasonable alternative but to succumb. We therefore remand the matter of whether the mortgage is voidable to the trial court. See Lakeside Equip. Corp. v. Town of Chester, 173 Vt. 317, 326, 795 A.2d 1174, 1182 (2002) (reversing and remanding superior court's decision on summary judgment based on finding of insufficient evidence).

¶ 32. EverBank argues that ratification or their status as a bona fide purchaser defeat Caroline's duress claim, should she succeed in showing that the mortgage is voidable. As to the former, EverBank argues that Caroline cannot avoid the mortgage after ratification by accepting its benefits, but the summary judgment is insufficient for us to determine this issue. As noted by the trial court, it is EverBank as the proponent of the issue of ratification that bears the burden of its proof. Adams v. Barcomb, 125 Vt. 380, 383, 216 A.2d 648, 650 (1966) ("The burden of proof was upon the defendant to prove a subsequent ratification by the plaintiff of the original transaction."). EverBank moved for summary judgment solely on the basis of non-payment; neither its motion nor its supporting material addressed ratification. EverBank points to Caroline's failure to address ratification, but she moved for summary judgment solely that the mortgage was void, and did not address whether it was voidable. Thus, neither motion for summary judgment addressed ratification, and it was not before the trial court. For this reason, we also remand for further evidence on the issue of ratification and for a determination of whether ratification defeats Caroline's duress claim, should she show that the mortgage is voidable.

¶ 33. Second, whether Caroline can avoid a voidable mortgage against a bona fide purchaser depends on whether EverBank is, in fact, a bona fide purchaser. It is undisputed that EverBank acquired its interest in the mortgage in July 2013, seven months after Caroline raised the duress claim in her December 2012 answer. EverBank cannot now argue that was a bona fide purchaser when it had constructive, if not actual, notice of this defect. See 9A V.S.A. § 3-305(a)(1) (holder of a negotiable instrument is not "holder in due course" where holder took instrument with notice that party had duress defense); cf. Julian v. Buonassissi, 997 A.2d 104, 118 (Md. 2010) ("A bona fide purchaser, in the case of a foreclosure sale, is a purchaser who

takes the property without notice of defects in the foreclosure sale." (quotations omitted)). We affirm the trial court's conclusion that the bona-fide-purchaser doctrine is not available to EverBank should Caroline prove her duress claim.

¶ 34. Finally, we address EverBank's argument that the trial court abused its discretion in refusing to consider the equitable arguments raised for the first time in EverBank's Rule 59(e) motion. Rule 59(e) gives the trial court broad power to reconsider issues previously before it. In re Robinson/Keir P'ship, 154 Vt. 50, 54, 573 A.2d 1188, 1190 (1990) (quotation omitted). It was therefore within the trial court's discretion to deny consideration of discrete issues not raised prior to entry of judgment. See No. Sec. Ins. Co. v. Mitec Elect., Ltd., 2008 VT 96, ¶ 44, 184 Vt. 303, 965 A.2d 447 (denying Rule 59(e) motion involving additional claim for relief that could have been raised prior to entry of judgment but were not). Regardless of this finding, because the trial court's judgment has been vacated, its decision on the Rule 59(e) motion, while within its discretion when made, is no longer germane. EverBank may raise the arguments it previously sought to raise in the Rule 59 motion if the trial court permits an amended answer pursuant to Rule 15(a) on remand.

The civil division's decision on summary judgment in favor of Caroline Marini as to whether the mortgage is void is reversed and vacated; judgment on the matter shall issue to EverBank. Whether the mortgage is voidable and whether Caroline ratified the mortgage are remanded for further proceedings consistent with this opinion. The civil division's decision as to whether the bona fide purchaser doctrine is available to EverBank is affirmed.

FOR THE COURT:

_____
Associate Justice

22