*Jackson v. Town of Castleton*, No. 339-6-15 Rdcv (Teachout, J., Nov. 25, 2015).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 339-6-15 Rdcv** |

**SANDRA MAYO JACKSON,**
    **Petitioner**

    v.

**TOWN OF CASTLETON,**
    **Respondent**

## DECISION
Cross Motions for Summary Judgment

Petitioner is a resident of Castleton who challenges the process used in a Town vote on a public question. She seeks an order vacating the outcome of the vote and an order that a new vote be taken. The Town contends that there was no error justifying a new vote.

Petitioner represents herself, and the Town is represented by Attorney Paul Gillies. The Town filed a Motion for Summary Judgment, and Petitioner responded with her own Motion for Summary Judgment.

For the reasons set forth below, the Court grants the Town's Motion for Summary Judgment and denies the Petitioner's Motion for Summary Judgment.

### Undisputed Material Facts

Petitioner's filings do not meet the requirements of Rule 56 of the Vermont Rules of Civil Procedure regarding motions for summary judgment in that she submitted no affidavits (notarized statements) as required by the Rule to support the facts she sets forth. Ordinarily, the Court would require compliance with the Rule. However, the Town's attorney appears not to dispute the material factual representations made by the Petitioner, and in order not to unduly complicate the proceedings, the Court accepts them. The material facts as presented by both parties are undisputed.

On March 3, 2015, the Town of Castleton held a Town Meeting during which it voted on Article 50, a public question regarding the appropriation of town funds for the construction of an addition to the Castleton Volunteer Fire Station. The Town Clerk, Katy Thornblade, delivered 146 absentee ballots to voters who had requested them. The Article failed, with 354 voting in favor and 365 voting against.

A petition for reconsideration of the Article was filed, and a reconsideration vote was held on May 12, 2015. In the interim, Ms. Thornblade had retired as Town Clerk at the end of her term in March. The new Town Clerk, Nedra Boutwell, did not distribute absentee ballots for the reconsideration vote to all of the voters who had requested them for the original March Town Meeting. Of the voters who had requested absentee ballots for the March Town Meeting, 43 did not receive absentee ballots for the reconsideration vote.[1] At the reconsideration vote, the Article passed by a margin of 17 votes, with 362 voting in favor and 345 voting against.

In the Annual Report of the Town of Castleton prepared for the March 15, 2015 Town Meeting, in a section entitled "Elections: Important Information About Elections & Voting," on page 54, the former Town Clerk, Ms. Thornblade, stated that "absentee ballot requests must be made each year but will be good for every election of that year."

The Town of Castleton used a form entitled "Request for Early Absentee Voter Ballot for (ONE YEAR ONLY) [sic]." On that form, under the heading "I request early absentee voter ballot(s) for the election(s) checked below," there are check boxes for voters to check in making a request for absentee ballots. There are separate boxes for "Annual Town Meeting" and "All other local elections" as well as other boxes for primary and general elections. (For military and overseas voters, there is no box for "All other local elections"). The form states at the top, "All voters including military and overseas voters must now submit a new request for absentee ballots each year."

---

[1] The *pro se* Petitioner's handwritten list of 43 such voters was included in the materials she submitted to the Court with the letter that the Court construed as her Complaint. It was not included or addressed in the summary judgment materials filed by either party. The Town has not disputed the number of such voters, which is irrelevant to the Town's position and arguments. For the purposes of summary judgment, the Court deems it undisputed that there were 43 such voters.

The policy in Castleton under Ms. Thornblade's clerkship had been to consider applications for absentee ballots valid for all elections within a year after receipt by the Town Clerk.[2]

Town Clerk Nedra Boutwell did not send absentee ballots to voters who did not request them for the particular election, including the reconsideration vote.[3]

## Conclusions of Law

"Summary judgment is appropriate only where, accepting the allegations of the nonmoving party as true, there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Everbank v. Marini*, 2015 VT 131, ¶ 15 (quoting *Farnham v. Inland Sea Resort Props., Inc.*, 2003 VT 23, ¶ 6 (mem.)). Because the material facts in this case are undisputed, summary judgment is appropriate.

As an initial matter, Petitioner is correct that she is entitled to contest the vote based on a claim of errors in voting procedures. "The result of an election for any…public question may be contested by any legal voter entitled to vote on the…public question to be contested." 17 V.S.A. § 2603(a).

Grounds for such a complaint are either:

---

[2] Although Petitioner does not mention this in her summary judgment filings, in her original petition to the Court she pointed to the Secretary of State's Town Meeting Frequently Asked Questions website, https://www.sec.state.vt.us/elections/frequently-asked-questions/town-meeting.aspx, which advises as follows:

> Although the law does not speak directly to whether a person who has requested an absentee ballot for town meeting votes by Australian ballot, must make a separate request for an absentee ballot for reconsideration, we suggest that fairness dictates that you send absentee ballots for the reconsideration to all voters who had requested absentee ballots for town meeting. Reconsideration is really an extension of town meeting. It is likely that a court would find that the obligation to send a ballot to a voter would continue until the voting on the issue is complete.

[3] Petitioner claims that Nedra Boutwell deleted the names of the voters who had requested absentee ballots for the March vote on a portal maintained by the Secretary of State prior to the reconsideration vote, and suggests that such action was part of disenfranchising persons who had requested absentee ballots in March based on an understanding that they would get them for a year. Ms. Boutwell claims that the portal for the town is reset for each new election as a matter of routine and she did nothing improper. Although there appears to be a dispute about the use and maintenance of the portal, no facts pertinent to such a dispute appear to be material to the claim in this case. It is clear that persons who did not request absentee ballots for the May reconsideration vote were not sent such ballots. That is the material fact.

(1) That errors were committed in the conduct of the election…sufficient to change the ultimate result;

(2) That there was fraud in the electoral process, sufficient to change the ultimate result; or

(3) That for any other reason, the result of the election is not valid.

17 V.S.A. § 2603(b).

Petitioner filed this action based on 17 V.S.A. § 2603(b)(1) above: "It is my belief that 'errors were committed in the conduct of the election…sufficient to change the ultimate result' (17 V.S.A. § 2603(b)(1). [sic]" Petition filed June 11, 2015, page 1. In the Conclusion section of her filing of September 28, 2015, she stated, "[t]he registered absentee voter ought to get what they thought they were getting and not have to loose [sic] out because of the mistakes of town clerks or state statutes no longer being practiced." The Petitioner requests the remedy of a new vote on the Article.

The Town argues that there was no error in the conduct of the vote because the new Town Clerk was not required by law to distribute absentee ballots for the May reconsideration vote to voters who requested them for the original Town Meeting.

The Town is correct. 17 V.S.A. § 2532(d) provides:

An application for an early voter absentee ballot shall be valid for only one election, unless specific request is made by an early or absentee voter that the application be valid for both a primary election, excluding a presidential primary, and the general election next following, as long as both ballots are to be mailed to the same address.

The language of the statute is clear: an application for an absentee ballot is valid for only one election, with one specified exception. The election at issue in this case was not a primary election with a subsequent general election, so the exception clause is inapplicable. The Court concludes that applications for absentee ballots for the Town Meeting of March 3, 2015 were valid only for the Town Meeting election itself, and not for the reconsideration vote. The new Town Clerk was not required to send absentee ballots for the reconsideration vote to voters who only requested them for the original Town Meeting.

Even if during Ms. Thornblade's clerkship the practice had been to consider applications for absentee ballots valid for all elections within a year after receipt by the Town Clerk, it was not error for Ms. Boutwell not to do so in May at the time of the reconsideration vote. Even if Ms. Thornblade's practice was based on a

4

recommendation from the Secretary of State, the Secretary of State does not have the authority to add an exception to what is otherwise a clear statutory law.

The absentee ballot request form used by Castleton was apparently prepared by the Secretary of State for use by Town Clerks. There may be laudable policy arguments in favor of the practice embodied in the form. Nevertheless, it is a direct violation of the clear one-application-one-election policy expressed by the General Assembly in 17 V.S.A. § 2532(d). The form cannot create an obligation on the part of the Town Clerk to undertake action that the law does not authorize. As the Town correctly argues, to the extent that Ms. Thornblade allowed voters to request absentee ballots for multiple elections, her actions were *ultra vires*, beyond the scope of her legal authority under 17 V.S.A. § 2532(d). It was not error for Nedra Boutwell as Town Clerk to decline to continue a practice contrary to the requirements of the law.

The Petitioner argues that, notwithstanding 17 V.S.A. § 2532(d), the absentee voters were entitled to rely on the good-for-one-year practice that was clearly expressed in the Town Report and on the form given to persons requesting absentee ballots. The thrust of the argument is that the frustration of the voters' reasonable expectation of receiving a reconsideration ballot amounts to disenfranchisement sufficient to constitute error under 17 V.S.A. § 2603(b)(1). This is potentially a reasonable hypothesis, and it is always worthwhile to be vigilant about the integrity of the voting process. Therefore, although the parties focused on 17 V.S.A. § 2603(b)(1), the Court will consider whether Petitioner has made a case under 17 V.S.A. § 2603(b)(3): whether "for any other reason the result of the election is not valid."

Petitioner might argue that if 43 people had requested that the Town Clerk send them absentee ballots for a year from the time they submitted the request, and May of 2015 was within that year, and at least 18 of those people did not otherwise vote and would have voted against the Article by absentee ballot if a ballot had been mailed to them, the ultimate result could have been different, as the Article could have been defeated at the reconsideration vote rather than passed.

However, the mere possibility of such a result is not enough to meet the standard of "just cause" necessary to vacate the outcome of the vote and order a new vote. *See* 17 V.S.A. § 2603(e). While circumstances could have been as Petitioner alleges, it is equally possible that fewer than 18 of the 43 voters checked the box on the form labeled "All other local elections" within one year of May of 2015. If that had been the case, the outcome would not have been affected by the additional

5

absentee ballots. It is also possible that some of the persons who checked the box actually voted in person at the May reconsideration vote or would not have voted at all, in which case the additional absentee ballots would also not have affected the ultimate outcome of the election.

Speculation, or possibility, is not a sufficient basis for the Court to conclude that at least 18 voters were actually deprived of the opportunity to vote because of the change in practice that resulted from the new Town Clerk discontinuing the prior unauthorized practice. Petitioner sought summary judgment, but submitted no specific facts or statements of individual voters to support a finding that at least 18 voters were disenfranchised by the practice in a manner that would have changed the outcome of the May 2015 reconsideration vote. Therefore, there is no basis for declaring the vote invalid under 17 V.S.A. § 2603(b)(3).

## ORDER

For the reasons set forth above:
1. The Town's Motion for Summary Judgment is *granted,*
2. The Petitioner's Motion for Summary Judgment is *denied,*
3. Judgment shall issue in favor of the Town,
4. The Town's attorney shall prepare a judgment, and
5. Pursuant to 17 V.S.A. § 2603(f), the Clerk shall send a certified copy of this Decision to the Secretary of State.

Dated at Rutland this 25th day of November, 2015.

_____
Mary Miles Teachout
Superior Court Judge

6