## STATE OF VERMONT

**SUPERIOR COURT**
**Lamoille Unit**

**CIVIL DIVISION**
**Docket No. 152-9-16 Lecv**

**LAMOILLE COUNTY FIELD DAYS, INC.,**
  **Plaintiff**

**FILED**

**SEP 19 2017**

v.

VERMONT SUPERIOR COURT
LAMOILLE UNIT

**DREAMLAND AMUSEMENTS, INC.,**
  **Defendant**

### DECISION ON MOTIONS
**Defendant's Partial Motion for Summary Judgment**
**Defendant's Motion to Dismiss Plaintiff's Fraudulent Misrepresentation Claim**
**Defendant's Motion to Strike Plaintiff's Request for Punitive Damages**

Plaintiff Lamoille County Field Days, Inc. ("LCFD") contracted with Defendant Dreamland Amusements, Inc ("Dreamland") to have Dreamland provide amusement services, specifically carnival rides, games, and food booths, for LCFD's annual county fair. After the 2016 fair weekend did not go as planned, LCFD filed suit against Dreamland, alleging breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation. Dreamland counterclaimed, alleging breach of contract, quantum meruit, defamation, and tortious interference with contract. Dreamland now moves for partial summary judgment on its breach of contract and quantum meruit claims.[1] Dreamland also moves to dismiss LCFD's fraudulent misrepresentation claim, and moves to strike LCFD's related request for punitive damages.

### Undisputed Facts

The following facts are undisputed. On February 4, 2012, the parties contracted to have Dreamland provide amusements services for LCFD's 2012 and 2013 county fair. The 2012 contract called for Dreamland to perform on July 27-29 each year, and specifically to provide 13-15 amusement rides, 8-10 games, and 3-5 food units. The chosen dates corresponded with the fourth and last weekend of July for the first year of the contract. After two years of satisfactory performance, the parties entered into another agreement on February 1, 2014, calling for Dreamland to provide amusement services on July 25–27 for 2014, 2015, and 2016. Again, the dates utilized in the contract reflected the fourth and final weekend of July in 2014. The 2014 contract required Dreamland to provide 15 or more amusement rides, 8-10 games, and 3 food units. In both the 2012 and 2014 contract, the parties understood that the dates listed on the face

---

[1] Dreamland's "Count V," requesting declaratory relief regarding a 2017-19 contract between the parties, has since been settled.

.1

of the document only pertained to the first year of the deal, as those dates would not cover a Friday through Sunday weekend in subsequent years. Dreamland performed to LCFD's satisfaction in both 2014 and 2015.

In 2016, July had five weekends, and thus the fourth weekend of July was not also the last weekend. That year, July 25–27 (the dates on the face of the 2014 contract) fell on a Monday through Wednesday. In early 2016, LCFD informed Dreamland that it expected Dreamland to perform July 22–24, the fourth weekend of the month. Dreamland understood the contract as calling for performance on the last weekend of the month, July 29–31. After Dreamland learned of LCFD's understanding of the weekend of performance, Dreamland booked its northern amusement service units over July 22–24. Dreamland attempted to find a subcontractor to perform the fourth weekend of July, and eventually settled on D&L Amusements ("D&L").

On Wednesday, July 20, 2016, it became apparent to LCFD that Dreamland had sent D&L to perform in its place. Unfortunately, D&L only provided 10 rides instead of 15; 4 games instead of 8; and 2 food units instead of 3. Additionally, D&L did not initially have the necessary certification from the State of Vermont to operate amusement rides, preventing guests from using the rides until 5:00 PM on Friday, July 22, when D&L received such certification. As a result, LCFD lowered the single-ticket admission price from $12 to $10. One summer camp group cancelled, another left without paying, and a third has refused to pay its bill unless it receives a larger discount.

The July 2016 date debacle surrounding LCFD's county fair precipitated this action. LCFD filed suit, alleging breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation. Dreamland counterclaimed, claiming breach of contract, quantum meruit, defamation, and tortious interference with contract. Dreamland then moved for summary judgment on its breach of contract and quantum meruit claims, essentially arguing that there was not a meeting of the minds as to the date of performance in 2016, rendering the contract unenforceable. However, Dreamland contends that it is still entitled to recover for the value of services provided by D&L under a theory of quantum meruit. Dreamland also moves to dismiss LCFD's fraudulent misrepresentation claims, arguing that LCFD failed to plead the requisite elements with particularity. Based on its motion to dismiss, Dreamland moves to strike punitive damages.

## Analysis

### I. Dreamland's Summary Judgment Motion

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute of material fact, entitling the movant to judgment as a matter of law. *Gauthier v. Keurig Green Mountain, Inc.*, 2015 VT 108, ¶ 14; V.R.C.P. 56(a). The Court considers the evidence in the light most favorable to the non-moving party. *Stone v. Town of Irasburg*, 2014 VT 43, ¶ 25, 196 Vt. 356 (citing *Robertson v. Mylan Labs, Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356). "In determining whether there is a genuine issue of material fact, 'we will accept as true the allegations made in opposition to the motion … so long as they are supported by affidavits or

2

other evidentiary material.'" *Morisseau v. Hannaford Bros.*, 2016 VT 17, ¶ 12 (citing *Robertson*, 2004 VT 15, ¶ 15).

### a. Breach of Contract

In its counterclaim, Dreamland argues that LCFD breached the 2014 contract by requiring Dreamland to perform in 2016 on July 22–24 (the fourth weekend) rather than July 29–31 (the last weekend). However, in its motion for partial summary judgment, Dreamland argues that the 2014 contract was unenforceable as it pertains to 2016, because there was not a meeting of the minds. Both parties argue that their course of conduct from 2012 until 2015 informs which July 2016 weekend was correct under the contract: Dreamland maintains that the course of conduct shows the county fair always occurred on the last weekend of July, while LCFD counters that the parties' course of conduct demonstrates that the fair took place on the fourth weekend of July.

When the contract language is unambiguous, the court takes the words to represent the parties' intent. *Rounds v. Malletts Bay Club, Inc.*, 2016 VT 102, ¶ 16 (citing *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 19 (1997)). In addition, when the contract language is unambiguous, the court construes the relevant provision as a matter of law. *City of Newport v. Village of Derby Center*, 2014 VT 108, ¶ 6, 197 Vt. 560 (citing *Ferrill v. N. Am. Hunting Retriever Ass'n*, 173 Vt. 587, 590 (2002) (mem.)). Here, the parties' contract lists the "Dates of Operation" as July 25 to July 27. The agreement was entered into on February 1, 2014, and the term of the agreement is 3 years. The language as unambiguous: Dreamland was to provide amusement services to LCFD from July 25 to July 27 in 2014, 2015, and 2016. Because the parties' agreement is unambiguous regarding the date of performance, the parties' course of conduct is irrelevant. *Highridge Condominium Owners Assn. v. Killington/Pico Ski Resort Partners, LLC*, 2014 VT 120, ¶ 22, 198 Vt. 44.[2]

While the language of the 2014 contract is unambiguous regarding the 2016 dates of performance, those dates did not fall on a weekend in July. Consequently, Dreamland understood the weekend of performance to be July 29–31, while LCFD believed the proper weekend to be July 22–24. "It is, of course, a basic tenet of the law of contracts that in any agreement . . . there must be mutual manifestations of assent or a 'meeting of the minds' on all essential particulars." *EverBank v. Marini*, 2015 VT 131, ¶ 17, 200 Vt. 490 (quoting *Evarts v. Forte*, 135 Vt. 306, 309 (1977)). Without a meeting of the minds on the essential elements, the contract is unenforceable. *Starr Farm Beach Campowners Ass'n, Inc. v. Boylan*, 174 Vt. 503, 505 (2002). The dates on which amusement services are to be provided for a county fair is an essential element of such a contract. Because the contract dates, though unambiguous, were clearly in error, and each party believed that performance was to happen on a different weekend in July of 2016, there was no meeting of the minds as to obligations for 2016. Accordingly, the contract between Dreamland and LCFD is unenforceable as it pertains to 2016. As a result, both parties breach of contract claims must fail as a matter of law.

---

[2] Even if the court were to consider course of conduct, the evidence of prior conduct supports neither party's position, because there was no prior year of the parties' contractual relationship in which there were five weekends. There was no prior conduct for the circumstances at issue. To the extent the course of conduct of the years of 2012 through 2015 are considered, the parties' respective claims have equal value.

### b. Quantum Meruit

In the absence of an enforceable contract for the year 2016, Dreamland contends that it is still entitled to the value of services provided by D&L under a theory of quantum meruit. Quantum meruit is a quasi-contract theory, under which Dreamland seeks to impose an obligation on LCFD to make it whole for the cost of D&L's amusement services. *DJ Painting, Inc. v. Baraw Enterprises, Inc.*, 172 Vt. 239, 242 (2001). "Claims for quasi-contract are based on an implied promise to pay when a party receives a benefit and the retention of the benefit would be inequitable." *Id.* (quoting *In re Estate of Elliott*, 149 Vt. 248, 252 (1988)). The most significant requirement for recovery via a quasi-contract theory is that enrichment to one party be unjust. *Id.* (citing *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 149 Vt. 37, 40 (1987)). "The proper inquiry is 'whether, in light of the totality of circumstances, it is against equity and good conscience to allow defendant to retain what is sought to be recovered.'" *Id.* (quoting *Legault v. Legault*, 142 Vt. 525, 531 (1983)).

Dreamland provided D&L to perform in its place from July 22–24, 2016. While D&L did not provide the 15 rides, 8-10 games, or 3 food units called for in the 2014 contract, it did provide 10 rides, 4 games, and 2 food units. Although LCFD had to reduce its ticket prices, lost some summer camp customers, and had to delay opening the rides until 5:00 PM on Friday, July 22, it still hosted a county fair. Retention by LCFD of the benefits of D&L's services without any compensation would amount to an inequitable windfall. Dreamland's motion for partial summary judgment on its quantum meruit claim is thus granted as to liability, with the amount of recovery yet to be determined in an evidentiary hearing.[3]

### II. Dreamland's Motion to Dismiss

When reviewing a motion to dismiss under V.R.C.P. 12(b)(6), the court "must take all factual allegations as true and consider 'whether it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief.'" *In re New England Police Benev. Ass'n*, 2016 VT 67, ¶ 9 (quoting *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1). However, the court is not required to accept as true conclusory allegations or legal conclusions masquerading as factual conclusions in a 12(b)(6) analysis. *Colby*, 2008 VT 20, ¶ 10 (citing *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). "Motions to dismiss for failure to state a claim are disfavored and are rarely granted." *Colby*, 2008 VT 20, ¶ 5 (citing *Gilman v. Me. Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 14, 175 Vt. 554). "The key to whether a complaint is sufficient is notice; the complaint must provide 'a statement clear enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.'" *Prive v. Vt. Asbestos Grp.*, 2010 VT 2, ¶ 15, 187 Vt. 280 (quoting *Bock v. Gold*, 2008 VT 81, ¶ 5, 184 Vt. 575). In ruling on a motion to dismiss, the Court may properly consider materials central to the complaint, "matters subject to judicial notice, such as statutes and regulations, and matters of public record without converting the motion into one for summary judgment." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n.4, 186 Vt. 605. Of relevance to this case, fraud claims must be pled with particularity. V.R.C.P. 9(b).

---

[3] The proper measure of recovery in a quantum meruit claim "is determined by the reasonable value of plaintiff's services regardless of their value to defendant." *In re Estate of Elliot*, 149 Vt. 248, 23 n.2 (1988).

### a. Fraudulent Misrepresentation

LCFD claims that Dreamland fraudulently misrepresented its ability to perform on July 22–24 until July 20, 2016, effectively limiting LCFD's ability to mitigate harm and causing damages. Dreamland moves to dismiss LCFD's fraudulent misrepresentation claim, arguing that LCFD failed to plead some of the requisite elements with particularity. In Vermont, fraudulent misrepresentation has the following essential elements: "(1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party act[ed] in reliance on that fact; and (5) is thereby harmed." *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 13 (quoting *Estate of Alden v. Dee*, 2011 VT 64, ¶ 32, 190 Vt. 401). "Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts." *Estate of Alden*, 2011 VT 64, ¶ 32 (citing *Sutfin v. Southworth*, 149 Vt. 67, 69–70 (1987)).

LCFD alleges that until D&L's rides began showing up a few days before July 22, 2016, it believed, based on Dreamland's communications leading up to the fair, that Dreamland was going to bring its midway as it had in years past. Specifically, LCFD pled that, a week before the fair, it had communicated with Dreamland's employee about Dreamland's presence at the fair and provision of amusement services. A few days later, on July 19, 2016, D&L delivered its rides to the fairgrounds. The next day, LCFD learned that Dreamland had subcontracted with D&L, and D&L was providing fewer rides, games, and food units than anticipated. LCFD also pled that Dreamland never communicated that it would not perform under the purported contract, and did so intentionally, even though Dreamland knew it would not be performing. Based on the foregoing, LCFD satisfied the first three elements of a fraudulent misrepresentation claim. In addition, LCFD alleged that Dreamland's actions left LCFD with no opportunity to mitigate damages. Put differently, LCFD relied on Dreamland's representation that it would perform by not seeking out alternate amusement service providers in the week leading up to the county fair. Finally, LCFD adequately pled that its reputation was harmed as a result of Dreamland's conduct and suffered lost revenues. LCFD has sufficiently satisfied the particularity requirements codified in V.R.C.P. 9(b) for purposes of a motion to dismiss. In light of the liberal pleading standard under V.R.C.P. 12(b)(6), Dreamland's motion to dismiss must be denied.

### b. Motion to Strike Punitive Damages

The problem between the parties arose in the context of a business relationship in which the parties made a mutual mistake as to the number of weekends that there would be in the month of July two years after the time the contract was made. It is particularly unfortunate because the mistake could have been avoided, but nonetheless the mistake was mutual, resulting in no enforceable contract for 2016. Nonetheless, Dreamland sought to fulfill LCFD's expectations. It is undisputed that Dreamland sought to fulfill LCFD's need for services on the fair weekend by providing a substitute. While LCFD's claim for fraudulent misrepresentation survives Dreamland's motion to dismiss, that does not necessarily mean that a prima facie case of malice is shown. The allegations are that Dreamland, after learning of the weekend on which LCFD expected performance, booked itself elsewhere and did not inform LCFD of the fact that it

was providing a substitute until too late for LCFD to take steps of its own. These are insufficient facts to show the element of malice that is necessary to support a claim for punitive damages. They show a business decision that may or may not have been fraudulent, but do not reflect a malicious intent. Therefore, the motion to strike the request for punitive damages is granted.

Order

Based on the foregoing,

1. Dreamland's Motion for Partial Summary Judgment is *denied* as to the breach of contract claim and *granted* as to liability for the quantum meruit claim.
2. Dreamland's Motion to Dismiss LCFD's fraudulent misrepresentation claim is *denied*,
3. Dreamland's Motion to Strike Punitive Damages is *granted*, and
4. Both parties' claims for breach of contract claim are *dismissed*.

A pretrial status conference will be scheduled to address the future needs of the case.

Dated this 14th day of September 2017.

Mary Miles Teachout
Superior Court Judge

6