Filed 03/26/25

| | | |
|---|---|---|
| **VERMONT SUPERIOR COURT**<br>Orange Unit<br>5 Court Street<br>Chelsea VT 05038<br>802-685-4610<br>www.vermontjudiciary.org |  | **CIVIL DIVISION**<br>Case No. 24-SC-01768 |

---

Aubrey Welch et al v. Katie Lyford

---

## ENTRY ORDER
(Decision on Small Claims Court Appeal)

Defendant Katie Lyford has filed the present appeal from a judgment of the Orange County Superior Court's Small Claims Court Division regarding payment for counseling sessions conducted by Plaintiff Aubrey Welch and Defendant Lyford's daughter between June 7, 2023 and June 12, 2024. This matter came before the Small Claims Court on January 27, 2025. It was heard by Judge Robert Bent who rendered a judgment in favor of Plaintiff Welch in the amount of $3,093.76. On February 10, 2025, the Small Claims Court issued an entry order denying Plaintiff Welch's motion to amend the judgment. On February 17, 2025, Defendant Lyford filed the present appeal, pursuant to Vermont Rules of Small Claims Procedure 10.

### Standard of Review

The scope of this Court's review on appeal is limited. An appeal from a small claims court judgment is heard and decided "based on the record made in the small claims court." 12 V.S.A. § 5538. The "appeal is limited to questions of law." V.R.S.C.P. 10(d). If the small claims court has applied the correct law, this court will affirm its "conclusions if they are reasonably supported by the findings." *Maciejko v. Lunenburg Fire Dist. No. 2*, 171 Vt. 542, 543 (2000) (mem.). In turn, the findings of fact must be supported by the evidence, *Brandon v. Richmond*, 144 Vt. 496, 498 (1984), and such findings "must be construed, where possible, to support the judgment," *Kopelman v. Schwag*, 145 Vt. 212, 214 (1984). The court's review of the small claims court's legal conclusions, however, is "non-deferential and plenary." *Maciejko*, 171 Vt. at 543 (quoting *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 439 (1999)).

### Issues for Appeal

Defendant Lyford's issues on appeal are as follow:

1. Defendant Lyford denies any ability to pay the judgment and points to evidence that she has submitted showing her financial limitations.

2. Defendant Lyford points to the Interim Domestic Order in her divorce case as evidence that her ex-spouse, Christopher Manfred, was obligated to pay Plaintiff Welch's invoices.

3. Defendant Lyford disputes that contract law applies to the present case and argues that the Family Division's Orders should apply, including various child support orders rendered in that docket because there is evidence that medical expenses, like Plaintiff Welch's invoices, would be considered child support.

4. Defendant Lyford disputes her obligation to pay under the Child Therapy Agreement and Intake Forms since it was the actions in that docket that gave rise to the need for the counseling sessions, and the sessions were begun pursuant to Defendant Lyford and Mr. Manfred's divorce docket. Defendant also points to multiple portions of this docket that outline Mr. Manfred's obligations to pay for counseling and to take responsibility for his debts.

5. Defendant Lyford contends that Plaintiff Welch could only have used Mr. Manfred's credit card if he had authorized it and had given his signature or agreement to be responsible for the payments, and that as a result, Mr. Manfred had assumed the debt.

6. Defendant Lyford points to inconsistencies in Plaintiff Welch's billing practices.

7. Defendant. Lyford claims that she signed the paperwork under duress.

8. Defendant Lyford disputes the substance of Plaintiff Welch's billings.

9. Defendant Lyford points to other orders in the family docket that she contends put the responsibility for paying Plaintiff Welch's invoices with Mr. Manfred.

10. Defendant Lyford points out that Plaintiff Welch sent billing statements to Mr. Manfred and collected payments from him prior to March of 2024.

## Legal Analysis

The issues raised by Defendant Lyford in the present appeal may be further broken down into five categories, which the Court will address separately.

*Ability to Pay*

The first issue is whether Defendant Lyford has the present ability to pay the judgment. While the Small Claims Court made some reference to this issue, it made no rulings. That is because the issue of ability to pay was not before the Small Claims Court. To understand this distinction, it is helpful to think of Small Claims Court actions as having two-parts. In part one, the parties litigate the merits of the claims. Does plaintiff have a right to money sought? Is the amount accurate? Is defendant the right person to collect against? If a plaintiff prevails, they receive a judgment, as Plaintiff Welch did in this case, but the judgment is not an order by the Court to pay. It is simply a formal decision that entitles a plaintiff, as a matter of law, to collect the amounts set out in the judgment from defendant.

If the judgment remains unpaid for 30 days after it becomes final and has been served on (or accepted by) the defendant, then part two begins. This is called the post-judgment process, and it is laid out, in part, by Vermont Small Claims Court Rule 7. It is in the post-judgment process that the question of a party's ability to pay becomes relevant. This is because a plaintiff is entitled to a judgment against a defendant regardless of the defendant's financial situation or ability to pay. But a plaintiff may only access the post-judgment process if they can show that defendant has an ability to pay the amounts sought, either in full or through installments. *Hale v. Peddle*, 648 A.2d 830, 831 (Vt. 1993) (finding that any order to pay many only come after a determination that the party has the ability to pay); see also V.R.S.C.P. 7.

It is important to note that the ability to pay is measured several ways. The Court will look to a party's overall income and expenses to determine if they have sufficient disposable income (after the necessities of life, such as food, rent, car, medical, and other needs are met). The Court is also obligated to exempt certain goods and forms of income, such as social security benefits, disability benefits, alimony and child support, and other forms of compensation. 12 V.S.A. § 2740. These exemptions render such payments exempt from attachment or consideration regardless of the amount. Id. The Rules also provide that if someone is receiving governmental benefits like reach-up or Dr. Dynasaur, their income is exempt. 12 V.S.A. § 3170.

Given that there has been a judgment, but no order to pay or post-judgment process, the Small Claims Court's determination was not binding, and it is not relevant to whether the underlying judgment is allowed. At the same time, ability to pay is a critical post-judgment issue, and nothing in the decision forecloses or prevents Defendant Lyford from asserting this issue if Plaintiff Welch should seek post-judgment process.

The bulk of Defendant Lyford's issues center on whether the various Family Division Orders in her divorce proceedings control over the contract claims that Plaintiff Welch has raised. In several of Defendant's issues for appeal and exhibits, she seeks to show where the Family Division has ordered her ex-spouse Christopher Manfred to pay for their child's counseling sessions. The Small Claims Court noted this issue, but it ruled that the Family Court's Orders are not binding on Plaintiff Welch because she was not a party to the divorce action, and the Orders in that docket are only binding on Defendant Lyford and Mr. Manfred. This is an important distinction. Courts only have jurisdiction over the parties to the immediate case before the Court. See *Baron v. McGinty*, 2021 VT 6, ¶ 22 (noting that once a court has personal jurisdiction over a party it continues for the rest of the particular case). In this case, the Court only has jurisdiction over Plaintiff Welch and Defendant Lyford. So even if the Court found that Mr. Manfred was the proper defendant, it could not issue a judgment against him because he is not a party to this case.

By extension, Defendant Lyford cannot assert the Family Division Orders against Plaintiff Welch who is not a party. This is an issue of not just notice but of jurisdiction. Plaintiff Welch may have been aware of the divorce proceedings, and she may have even been aware of its Orders for Mr. Manfred to pay, but that does not, in and of itself, obligate Plaintiff Welch to follow the Family Division's Orders. See *Daiello v. Town of Vernon*, 2018 VT 17, ¶ 14 ("[N]onparties are ordinarily not bound by issues resolved in a prior judgment.") (citing 18A C. Wright et al., Federal Practice and Procedure § 4449, at 317 (3d ed. 2017)). Of course, Defendant Lyford may seek to enforce the Family Division Orders against Mr. Manfred and seek any damages resulting from the present case in such an action in the Family Division.[1]

In light of this jurisdictional distinction, the Court cannot rely on the Family Division's Orders in Defendant Lyford's divorce to determine whether or not she is liable for any payments to Plaintiff Welch, a non-party to that divorce action. Instead, the relationship before the Court is governed strictly by the contractual relationship between the parties.

*Plaintiff's Contract Claims*

At trial in this matter, the Small Claims Court found that Defendant had reached out to Plaintiff to obtain counseling services for Defendant's daughter. As part of the initiation of services, Defendant

---

[1] Defendant's filings indicate that the divorce action is still pending, and if such is the case, then presumably she would be free to assert any amounts adjudged against her in this decision in the Family Division pursuant to that Court's Orders.

signed a document that laid out the terms for Plaintiff's work. This Agreement, which Defendant signed at the start of the child's treatment and again in January 2024 when Plaintiff was migrating her files to electronic records, has a provision entitled "Managed Care and Fees." In this section, Plaintiff set out that she did not accept insurance and that all payments would have to be made at the time of the session. It also laid out that Plaintiff would not continue services if two or more sessions were unpaid. Defendant signed and agreed to these terms. The facts also show that Defendant was the primary point of contact with Plaintiff and acted as the parent who signed the child up for the services and signed all of the agreements to begin treatment. Importantly, the Small Claims Court found no evidence that Mr. Manfred had signed any agreements with Plaintiff or agreed to be bound to make payments to her. Similarly, the documents do not contain any modifications or statements that would indicate that Plaintiff Welch agreed only to invoice Mr. Manfred or to seek payment only from him.

Once counseling began, the evidence shows that Mr. Manfred did make payments to Plaintiff, and that Plaintiff invoiced Mr. Manfred. Once Mr. Manfred stopped, then Plaintiff contacted Defendant and informed her that she would need to make the payments. The evidence also shows that Defendant, because she took the child to the sessions, was aware of the counseling sessions and the amounts that were being billed.

The interpretation of a contact is a matter of law, and it must be interpreted according to the parties' intent as expressed in writing. *Sutton v. Purzycki*, 2022 VT 56, ¶ 37. In this case, there is only one reasonable interpretation of the "Managed Care and Fees" provision of the parties' agreement, and that is Defendant was agreeing to provide payment to Plaintiff for the counseling services that Plaintiff would render. The section lays out the prices for services and makes clear that payment is due at the time each session occurs. The section also states that Plaintiff did not accept insurance. The meaning of this provision within the context of the agreement, which was formed at the initiation of the counseling services, is that the signer is agreeing to provide payment.

Defendant's argument is that there was effectively a side-agreement that Plaintiff would accept payment from Mr. Manfred, and the facts show that Plaintiff did precisely this. This issue, however, is not whether Plaintiff accepted other payment sources, but whether the agreements obligate her to seek payment from those other parties. The Agreement does not, and the Court is obligated to look at the plain language of the agreement. Id.

*Course of Dealing with Mr. Manfred*

Defendant next claims that because Mr. Manfred made payments to Plaintiff Welch, and Plaintiff sent him invoices created a course of dealing or implied contract, but this argument would only work in the absence of a written agreement. *Mongeon Bay Properties, LLC v. Mallets Bay Homeowner's Ass'n*, 2016 VT 64, ¶ 30 (noting that a course of dealing can supplement or qualify ambiguous terms in a written agreement). In this case—even taking the evidence in the broadest light possible and assuming that Plaintiff had agreed to work with Mr. Manfred to obtain payments—the Small Claims Court found that there was nothing in this transaction that would discharge Defendant's ongoing obligations under the agreement to provide payments, and that the course of dealing simply showed that Defendant was able, for a period of time, to secure payment from Mr. Manfred, and that Plaintiff worked with the parties to accommodate this arrangement. In this respect, the Small Claims Court's finding is sufficiently consistent with the record, and the Court finds no basis to disturb this factual finding. Id. (noting that "course of dealing" is a factual issue).

Based on this, the Court finds no basis to disturb the Small Claims' Court's decision that the parties formed an agreement in which Defendant agreed to pay Plaintiff for the services rendered.

*Challenges to Judgment Amount and Duress*

Defendant challenges some of Plaintiff's billings and business practices to attack the amounts sought, but the Court finds no basis in the record to disturb the Small Claims Court's findings that the amounts sought were properly billed for services rendered to Defendant's child. As such, the Court affirms the Small Claims' Court findings.

Defendant also alleged that she signed the agreement under duress. The record does not support this claim, and the facts as alleged do not establish a claim of duress as a matter of law, which requires a high standard of proof and removal of free will. *EverBank v. Marini*, 2015 VT 131, ¶ 21 (noting that duress consists of "a wrongful act compelling assent to a transaction without the volition of the actor") (quoting *Quazzo v. Quazzo*, 136 Vt. 107, 113–14 (1978)). To establish duress, a party must show that they were improperly threatened to sign a document that forced them to sign against their free-will. Id. at ¶ 22. This is not simply a difficult decision or a difficult situation, it is an external threat, usually of physical violence that forces someone to sign. Id. In this case, Defendant contends that she did not want to sign the agreement and felt stuck, but there was no evidence in the record of an improper threat that forced her to sign the agreement.

## **ORDER**

Based on the foregoing, the Court finds that the Small Claims Court's decision is consistent with both the record below and the law or contract. Therefore, the decision of the Small Claims Court in this matter is **Affirmed** and the present appeal is **Dismissed.**

Electronically signed on 3/21/2025 6:30 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge